# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA
### ALEXANDRIA DIVISION

|  |  |
|---|---|
| AMDOCS (ISRAEL) LIMITED, an Israeli Corporation,<br><br>Plaintiff,<br><br>v.<br><br>OPENET TELECOM, INC., a Delaware Corporation, and OPENET TELECOM LTD., An Irish Corporation,<br><br>Defendants. | Case No. 1:10-cv-910 (LMB/TRJ)<br><br><br><br>**JURY TRIAL DEMANDED** |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR JUDGMENT ON THE PLEADINGS THAT AMDOCS' ASSERTED PATENT CLAIMS ARE INVALID UNDER 35 U.S.C. § 101**

## TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ...................................................................................................1

II.     APPLICABLE LAW ............................................................................................2

    A.      Patentable Subject Matter Under 35 U.S.C. § 101 ...........................................2

    B.      Rule 12(c) Is The Best Procedural Vehicle To Address § 101 Issues .................4

III.    ARGUMENT .........................................................................................................5

    A.      The Asserted Claims Of The '065 Patent Are Directed To Patent-Ineligible
            Subject Matter And Are Invalid Under § 101.......................................................6

    B.      The Asserted Claims Of The '510 Patent Are Directed To Patent-Ineligible
            Subject Matter And Are Invalid Under § 101.....................................................10

    C.      The Asserted Claims Of The '984 Patent Are Directed To Patent-Ineligible
            Subject Matter And Are Invalid Under § 101.....................................................13

    D.      The Asserted Claims Of The '797 Patent Are Directed To Patent-Ineligible
            Subject Matter And Are Invalid Under § 101.....................................................15

IV.     CONCLUSION....................................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Accenture Global Services, GmbH v. Guidewire Software, Inc.*,
    728 F.3d 1336 (Fed. Cir. 2013)..................................................................................4, 6

*Alice Corp. Pty. Ltd. v. CLS Bank International*,
    134 S. Ct. 2347 (2014)......................................................................... *passim*

*Bilski v. Kappos*,
    130 S. Ct. 3218 (2010)......................................................................... *passim*

*buySAFE, Inc. v. Google, Inc.*,
    964 F. Supp. 2d 331 (D. Del. 2013)......................................................................5

*buySAFE, Inc. v. Google, Inc.*,
    No. 2013-1575, 2014 WL 4337771 (Fed. Cir. Sept. 3, 2014) ..................................5

*CLS Bank International v. Alice Corp. Pty. Ltd.*,
    717 F.3d 1269 (Fed. Cir. 2013) (*en banc*) ..................................................................4

*CMG Financial Services, Inc. v. Pacific Trust Bank, F.S.B.*,
    C.A. No. 11-10344 PSG, slip. op. (C.D. Cal. Aug. 29, 2014) ..................................5

*Comcast IP Holdings I, LLC v. SprintWalker Communications Co.*,
    C.A. No. 12-205-RGA, 2014 WL 3542055 (D. Del. July 16, 2014).........................5

*DietGoal Innovation, LLC v. Bravo Media, LLC*,
    No. 13 Civ. 8391 (PAE), 2014 WL 3582914 (S.D.N.Y July 8, 2014) ...............5, 17

*Digitech Image Technologies LLC v. Electronics For Imaging, Inc.*,
    758 F.3d 1344 (Fed. Cir. 2014)..................................................................3, 5, 7, 8

*Eclipse IP LLC v. McKinley Equipment Corp.*,
    No. SACV 14–742–GW(AJWx), 2014 WL 4407592 (C.D. Cal Sept. 4, 2014) ...................5, 6

*Every Penny Counts, Inc. v. Wells Fargo Bank, N.A.*,
    No. 8:11-cv-2826, 2014 WL 4540319 (M.D. Fla. Sept. 11, 2014).........................6

*I/P Engine, Inc. v. AOL, Inc.*,
    No. 2013-1307, 2014 WL 3973501 (Fed. Cir. Aug. 15, 2014) (Mayer, J. concurring) ........1, 2

*Loyalty Conversion Systems, Corp. v. American Airlines, Inc.*,
    No. 2:13-cv-655, 2014 WL 4364848 (E.D. Tex. Sept. 2, 2014)..................................5, 10, 17

*Open Text S.A. v. Alfresco Software Ltd.*,
No. 13-cv-04843-JD, 2014 WL 4684429 (N.D. Cal. Sept. 19, 2014) ...................................5, 6

*Planet Bingo, LLC v. VKGS LLC*,
No. 2013–1663, 2014 WL 4195188 (Fed. Cir. August 26, 2014) ............................3, 5, 10, 13

*Tuxis Technologies, LLC v. Amazon.com, Inc.*,
No. 13-1771, 2014 WL 4382446 (D. Del. Sept. 3, 2014)..........................................................6

*Walker Digital, LLC v. Google, Inc.*,
No. 11-318, 2014 WL 4365245 (D. Del. Sept. 3, 2014).......................................................6, 10

**FEDERAL STATUTES**

35 U.S.C. § 101............................................................................................................... *passim*

35 U.S.C. §§ 102, 103, and 112 .................................................................................................1

**OTHER AUTHORITIES**

Ashby Jones, *Courts Nix More Software Patents*, WALL ST. J. (Sept. 21, 2014), *available at* http://online.wsj.com/articles/federal-courts-reject-more-software-patents-after-supreme-court-ruling-1411343300 .............................................................................................1

## I.     **<u>INTRODUCTION</u>**

In June 2014, the Supreme Court, in *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014), expanded the reach of *Bilski v. Kappos*, 130 S. Ct. 3218 (2010), and unanimously declared that patent claims directed to abstract ideas (e.g., processing network usage data) and implemented using generic computer equipment (e.g., servers) are invalid under 35 U.S.C. § 101. As a senior partner from the law firm representing Amdocs told the Wall Street Journal on September 21, 2014, the Supreme Court "has changed things fundamentally."[1]  Judge Mayer recently observed that § 101 is now a threshold issue whose resolution must precede other issues – "[u]ntil it is determined that claimed subject matter is even eligible for patent protection, a court has no warrant to consider subordinate validity issues."  *I/P Engine, Inc. v. AOL, Inc.*, No. 2013-1307, 2014 WL 3973501, at *11 (Fed. Cir. Aug. 15, 2014) (Mayer, J. concurring).

Since *Alice*, numerous data processing patents with claims very similar to the Amdocs patent claims have failed to clear this new threshold and have been declared invalid as a matter of law.  The asserted Amdocs patent claims, attached hereto as Exhibit 1-4, should be declared invalid before the Court and the parties needlessly expend additional resources on claim construction and preparing for trial on non-infringement and invalidity under 35 U.S.C. §§ 102, 103, and 112:

- U.S. Pat. No. 7,631,065 ("the '065 patent") (Ex. 1) claims the abstract idea of correlating and enhancing one networking accounting record with data from a second record;

- U.S. Pat. Nos. 7,412,510 ("the '510 patent") (Ex. 2) and 6,947,984 ("the '984 patent") (Ex. 3) claim the abstract idea of collecting and completing network usage information to create a database that can be queried and that can generate reports and alerts; and

---

[1]     Ashby Jones, *Courts Nix More Software Patents*, WALL ST. J. (Sept. 21, 2014), *available at* http://online.wsj.com/articles/federal-courts-reject-more-software-patents-after-supreme-court-ruling-1411343300.

- U.S. Pat. No. 6,836,797 ("the '797 patent") (Ex. 3) claims the abstract idea of collecting data and creating a single accounting record from that data.

Amdocs' asserted claims "add nothing of substance to the underlying abstract idea," as they merely claim rearranging data conventionally collected from a telecommunications network. *See Alice*, 134 S. Ct. at 2360. The claims cannot survive post-*Alice* scrutiny.

Amdocs' patent claims also suffer from the additional flaw that they are implemented using conventional telecommunications equipment. As explained below, the patent specifications describe using ordinary hardware and software, such as servers, databases, and graphic user interfaces, to implement the claimed inventions. Because the Amdocs patents claim using "a generic computer to perform generic computer functions" to implement an abstract idea, the Amdocs patents also cannot survive § 101 scrutiny for that reason. *See id.* at 2359.

In view of the fundamental change in the law of § 101 patent eligibility since the parties last appeared before this Court, Rule 12(c) provides an efficient tool to dispose of Amdocs' invalid patent claims. Patent eligibility is a threshold question of law that, unlike the infringement and other invalidity issues still remaining before the Court, does not require claim construction or further discovery. This Court should follow the lead of its numerous brethren in granting Rule 12(c) motions following *Alice* and "spare both [the] litigants and [the] Courts years of needless litigation." *I/P Engine, Inc.*, 2014 WL 3973501, at *12. Proceeding differently would run against how nearly every other court has handled § 101 issues since *Alice*.

## II. APPLICABLE LAW

### A. Patentable Subject Matter Under 35 U.S.C. § 101

It has long been clear that § 101 bars patents directed to abstract ideas. *See, e.g.*, *Bilski*, 130 S. Ct. at 3225 ("The Court's precedents provide three specific exceptions to § 101's broad patent-eligibility principles: 'laws of nature, physical phenomena, and abstract ideas.'"). Only

recently, however, did the Supreme Court lend clarity to the question of whether implementing an abstract idea using a computer is patent eligible – concluding, emphatically, that it is not. *See Alice*, 134 S. Ct. at 2358 ("[T]he mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention.").

*Alice* provides a two-step "framework for distinguishing patents that claim . . . abstract ideas from those that claim patent-eligible applications of those concepts." *Id.* at 2355. The first step is to determine whether the claim at issue is directed to an abstract idea. *Id*.

In many instances, the abstract idea is a "method of organizing human activity" (*id*. at 2356) – for example, methods for organizing and processing data. *See Planet Bingo, LLC v. VKGS LLC*, No. 2013–1663, 2014 WL 4195188, at *2 (Fed. Cir. August 26, 2014) ("[claim] recites the steps of selecting, storing, and retrieving two sets of numbers, assigning a player identifier and a control number, and then comparing a winning set of bingo numbers with a selected set of bingo numbers"); *Digitech Image Techs. LLC v. Elecs. For Imaging, Inc*., 758 F.3d 1344, 1350 (Fed. Cir. 2014) ("a process of organizing information through mathematical correlations"). Notably, a claimed process of organizing information using mathematical algorithms (computer code, for example) "to manipulate existing information to generate additional information is not patent eligible." *Digitech*, 758 F.3d at 1351.

The second step considers "whether the additional elements [of the claim] transform the nature of the claim into a patent-eligible application." *Alice*, 561 S. Ct. at 2355.[2] It is not enough to recite claims that simply use existing hardware and software components to collect and process data. Instead, to satisfy this second prong, the claim must include "an element or combination of elements that is sufficient to ensure that the patent in practice amounts to *significantly more* than a patent upon the [ineligible concept] itself." *Id*. (emphasis added).

---

[2]    All internal citations have been omitted from cited quotations unless noted otherwise.

3

This standard is not met when patent claims first recite an abstract idea and then include an instruction to "apply it" through the "the mere recitation of a generic computer." *Id*. at 2357-58. "Thus, if a patent's recitation of a computer amounts to a mere instruction to implement an abstract idea on a computer, that addition cannot impart patent eligibility." *Id*. at 2358.

Claims directed to methods, systems, and computer-readable media are all tested using the same two-step framework and rise and fall together. *See id.* at 2360 ("The concept of patentable subject matter under § 101 is not like a nose of wax which may be turned and twisted in any direction."); *see also CLS Bank Int'l v. Alice Corp. Pty. Ltd.*, 717 F.3d 1269, 1274 n.1 (Fed. Cir. 2013) (*en banc*) ("[E]ight judges, a majority, have concluded that the particular method, medium, and system claims at issue in this case should rise or fall together in the § 101 analysis."). Thus, if the Court finds that Amdocs' method claims are invalid, the counterpart system and computer-readable media claims must also be invalidated.

**B.      Rule 12(c) Is The Best Procedural Vehicle To Address § 101 Issues**

Rule 12(c) provides that "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Here, the parties are scheduled to appear before the Court on October 16, 2014 for a status conference but no trial date has been set. Early resolution of the § 101 issue will prevent unnecessary supplemental discovery, pretrial motions, and possibly even trial itself. These circumstances, and the fact that the decision in *Alice* was made three months ago while this case was still pending before the Federal Circuit, demonstrate that this motion is presented early enough not to delay trial.

Invalidity under § 101 is a question of law. *Accenture Global Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1340-41 (Fed. Cir. 2013). Because § 101 challenges often do not involve disputed issues of fact or require claim construction, since the Supreme Court's *Alice* decision, various district courts have addressed § 101 issues under Rule 12(c). *See,*

4

*e.g.*, *Open Text S.A. v. Alfresco Software Ltd.*, No. 13-cv-04843-JD, 2014 WL 4684429, at *3 (N.D. Cal. Sept. 19, 2014) ("It is not necessary in every case to construe the patent claims prior to determining subject matter eligibility."); *Eclipse IP LLC v. McKinley Equip. Corp.*, No. SACV 14–742–GW(AJWx), 2014 WL 4407592, at *6 (C.D. Cal Sept. 4, 2014) ("[N]either separate claim construction proceedings nor further development of the factual record are required before addressing the § 101 issue."); *see also buySAFE, Inc. v. Google, Inc.*, 964 F. Supp. 2d 331 (D. Del. 2013) (judgment on the pleadings) ("The Court's claim construction ruling, which is being issued separately today, has *no impact* on Defendant's Rule 12(c) motion.") (emphasis added), *aff'd*, No. 2013–1575, 2014 WL 4337771 (Fed. Cir. Sept. 3, 2014).

## III.   <u>ARGUMENT</u>

In the weeks since *Alice*, district courts and the Federal Circuit have repeatedly invalidated computerized data processing patents that are similar to Amdocs' asserted claims.[3]

---

[3]   *See, e.g.*, *Digitech Image Techs., LLC v. Elecs. For Imaging, Inc.*, 758 F.3d 1344, 1349 (Fed. Cir. 2014) (finding that a "device profile" within a digital image processing system "is not a tangible or physical thing and thus does not fall within any of the categories of eligible subject matter"); *Planet Bingo, LLC, v. VKGS, LLC*, No. 2013-1663, 2014 WL 4195188, at *1, 3 (Fed. Cir. Aug. 26, 2014) (invalidating claims that "recite computer-aided methods and systems for managing the game of bingo" because "the claims recite a generic computer implementation of the covered abstract idea"); *buySAFE, Inc. v. Google, Inc.*, No. 2013-1575, 2014 WL 4337771, at *5 (Fed. Cir. Sept. 3, 2014) ("That a computer receives and sends the information over a network—with no further specification—is not even arguably inventive."); *Comcast IP Holdings I, LLC v. Sprint Commc'ns Co.*, C.A. No. 12-205-RGA, 2014 WL 3542055, at *5 (D. Del. July 16, 2014) (invalidating a claim of the patent-at-issue because it "merely covers the application of what has for a long time been conducted solely in the mind to modern, computerized, telephony networks"); *DietGoal Innovation, LLC v. Bravo Media, LLC*, No. 13 Civ. 8391 (PAE), 2014 WL 3582914, at *14 (S.D.N.Y July 8, 2014) (invalidating the patent-at-issue because it "do[es] no more than 'simply instruct the practitioner to implement the abstract idea . . . on a generic computer'") (quoting *Alice*, 134 S.Ct. at 2359); *CMG Fin. Servs., Inc. v. Pacific Trust Bank, F.S.B.*, C.A. No. 11-10344 PSG, slip. op., at 10 (C.D. Cal. Aug. 29, 2014) ("[W]hether the claimed methods and systems can be completed on a piece of paper or require the use of a specialized banking computer, are insignificantly probative to a collateral issue or are entirely irrelevant to our § 101 analysis . . . ."); *Loyalty Conversion Sys., Corp. v. Am. Airlines, Inc.*, No. 2:13-cv-655, 2014 WL 4364848, at *2-5 (E.D. Tex. Sept. 2, 2014) (invalidating patents claiming "a method enabling a customer to convert

One district court even observed that at this point it would be odd to uphold the validity of a software patent. *Every Penny Counts, Inc. v. Wells Fargo Bank N.A.*, C.A. No. 8:11–cv–2826– T–23TBM, 2014 WL 4540319, at \*4 n.4 (M.D. Fla. Sept. 11, 2014) ("Conspicuously, the Supreme Court vacated the only Federal Circuit opinion, *Ultramercial*, upholding a software patent and declined certiorari over the two actions, *Bancorp* and *Accenture*, that invalidate software patents."). This Court should similarly invalidate Amdocs' asserted claims.

**A.      The Asserted Claims Of The '065 Patent Are Directed To Patent-Ineligible Subject Matter And Are Invalid Under § 101**

Amdocs asserts claims 1, 4, 7, 13 and 17 of the '065 patent. Independent claim 1, which is representative of all asserted independent claims, reads as follows:

> 1.  A computer program product embodied on a computer readable storage medium for processing network accounting information comprising:

---

loyalty award credits" and "a method in which a computer provides one or more Web pages that can be used by clients to convert non-negotiable loyalty award points," explaining that the patents-at-issue are "not fundamentally different from the kinds of commonplace financial transactions that were the subjects of the Supreme Court's recent decisions" in *Bilski* and *Alice*); *Walker Digital, LLC v. Google, Inc.*, No. 11-318, 2014 WL 4365245, at \*6 (D. Del. Sept. 3, 2014) ("Even accepting that the use of a computer increases speed and efficiency of performing the steps of the claims, and improves the likelihood of preserving the anonymity of the first and second parties, these characteristics do not save the claims."); *Tuxis Techs., LLC v. Amazon.com, Inc.*, No. 13-1771, 2014 WL 4382446, at \*1, 5 (D. Del. Sept. 3, 2014) (invalidating a claim reciting a "method for providing offers in real time . . . utilizing an electronic communications device . . ." because "[t]he computer performs nothing more than purely conventional steps that are well-understood, routine, and previously known to the industry"); *Eclipse IP LLC v. McKinley Equip. Corp.*, No. 14-cv-154, 2014 WL 4407592, at \*6-7 (C.D. Cal. Sept. 4, 2014) (invalidating a patent claiming a "method for communications in connection with a computer-based notification system," and explaining that the *Alice* "analysis fits the [patent's] claims precisely"); *Every Penny Counts, Inc. v. Wells Fargo Bank, N.A.*, No. 8:11-cv-2826, 2014 WL 4540319, at \*5 (M.D. Fla. Sept. 11, 2014) (relying on *Alice* to invalidate a method of and a system of automated saving or automated charitable giving); *Open Text S.A. v. Alfresco Software Ltd.*, No. 13-cv-04843-JD, 2014 WL 4684429, at \*1, 5 (N.D. Cal. Sept. 19, 2014) (invalidating patents on "systems and methods for carrying on marketing dialogues" under *Alice*, explaining that "both patents implement the basic marketing scheme on a generic computer system without any meaningful limitations").

computer code for receiving from a first source a first network accounting record;

computer code for correlating the first network accounting record with accounting information available from a second source; and

computer code for using the accounting information with which the first network accounting record is correlated to enhance the first network accounting record.

Independent claim 7 rewrites claim 1 as a method, while independent claim 13 rewrites it as a system. Dependent method claim 4 states that "the accounting information is in the form of a second network accounting record." Dependent system claim 17 states that the records are received and merged in "a module coupled to the plurality of data collectors."

The abstract idea of the '065 patent is correlating and enhancing network usage data, ostensibly to facilitate billing. In this regard, the asserted claims of the '065 patent bear a strong resemblance to claim 10 of U.S. Patent No. 6,128,415, held invalid in *Digitech Image Techs. LLC v. Elecs. For Imaging, Inc. See* 758 F.3d 1344 (Fed. Cir. 2014).

Method claim 7 of the Amdocs '065 patent and the nearly identical method claim 10 of the Digitech '415 patent are copied below:

| Claim 7 – '065 Patent | Claim 10 – '415 Patent |
|---|---|
| A method of <u>processing network accounting information</u> comprising: | A method of <u>generating a device profile</u> that describes properties of a device in a digital image reproduction system for capturing, transforming or rendering an image, said method comprising: |
| receiving from a first source <u>a first network accounting record</u>; | <u>generating first data</u> for describing a device dependent transformation of color information content of the image to a device independent color space through use of measured chromatic stimuli and device response characteristic functions; |

7

| | |
|---|---|
| correlating the first network accounting record with accounting information available from a second source; and | generating second data for describing a device dependent transformation of spatial information content of the image in said device independent color space through use of spatial stimuli and device response characteristic functions; and |
| using the accounting information with which the first network accounting record is correlated to enhance the first network accounting record. | combining said first and second data into the device profile. |

Just like the asserted claims of the '065 patent, the invalidated claim in *Digitech* was directed to "a process of taking two data sets and combining them into a single data set, the device profile." *Id.* at 1351. Concluding that the claim recited nothing more than the abstract idea of "taking existing information . . . and organizing this information into a new form," the Federal Circuit affirmed a grant of summary judgment of invalidity under § 101. *Id.* Thus, there can be no reasonable dispute that the '065 patent purports to claim an abstract idea. If anything, claim 10 of the '415 patent included more detailed limitations than the claims of the '065 patent.

The asserted claims of the '065 patent also fail to include "an element or combination of elements to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself." *Alice*, 134 S. Ct. at 2355. In *Alice*, the patent similarly claimed creating and merging two data sets – "a shadow credit record" and "a shadow debit record" – necessary for exchanging credit obligations. *Id*. at 2352 n.2. The patentee argued that the claims should be rendered patentable because the claimed invention necessarily used computer software and hardware, but the Supreme Court unequivocally said that was not enough:

> Using a computer to create and maintain "shadow" accounts amounts to electronic recordkeeping—one of the most basic functions of a computer. The same is true with respect to the use of a computer to obtain data, adjust account balances, and issue automated instructions; all of these computer functions are well-understood, routine,

8

conventional activities previously known to the industry. In short, each step does no more than require a generic computer to perform generic computer functions.

*Id*. at 2359. Put simply, "using some unspecified, generic computer" to execute an abstract idea "is not '*enough*' to transform an abstract idea into a patent-eligible invention." *Id.* at 2360 (emphasis in original).

Like *Alice*, the asserted claims of the '065 patent require, at most, only conventional computer hardware and software. For example, claim 1 of the '065 patent generically recites "computer code," while claim 13 of the '065 patent generically recites "data collectors." The '065 patent specification similarly recites that "the gatherers can be a*ny hardware and/or software* that performs the functions of a gatherer." '065 Patent, Col. 6:59-60. The '065 patent also states that gatherers may "run on non-dedicated hosts, as a normal user application on Windows NT or Unix," *i.e.,* existing conventional software. *Id*. at 6:56-57.

There is nothing special about these elements. They do not purport to improve the functioning of the computer or effect an improvement in any technology or technical field. Every computer utilizes "computer code," and can function as a "data collector." *See Alice*, 134 S. Ct. at 2360 ("[W]hat petitioner characterizes as specific hardware—a 'data processing system' with a 'communications controller' and 'data storage unit'—is purely functional and generic."). Whether considered individually or in combination, the elements of the asserted claims of the '065 patent amount to nothing more than instructions to implement the abstract idea using conventional computer equipment.

Nor are the claims of the '065 patent rendered patent-eligible because they are directed to "network accounting information" or because they make efficient the generation of millions of such records. The former is a mere field of use limitation that cannot impart patent eligibility. *See Bilski*, 130 S. Ct. 3231 ("*Flook* established that limiting an abstract idea to one field of use or

9

adding token postsolution components did not make the concept patentable.").  The latter is irrelevant because the ***claims*** do not require the creation of millions of merged records; rather they require but one.  *See, e.g.*, *Planet Bingo, LLC v. VKGS LLC*, No. 2013–1663, 2014 WL 4195188, at *2 (Fed. Cir. Aug. 26, 2014) (rejecting argument by patentee "that in real world use, literally thousands, if not millions of preselected Bingo numbers are handled by the claimed computer program, making it impossible for the invention to be carried out manually").

In short, the asserted claims of the '065 patent are directed to nothing beyond the abstract idea of merging information from two sources into one record.  They add no inventive concept to the abstract idea, but rather "are mainly functional in nature, and nothing in the claims or the specification reveals how any of the functions are performed or suggests why any of those functions are not within the routine capacity of a generic computer with conventional programming."  *Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*, No. 2:13-cv-655, 2014 WL 4364848, at *14 (E.D. Tex. Sept. 3, 2014).

"Given the ubiquity of computers, wholly generic computer implementation is not generally the sort of additional feature that provides any practical assurance that the process is more than a drafting effort designed to monopolize the abstract idea itself."  *Walker Digital, LLC v. Google, Inc.*, No. 11-318-LPS, 2014 WL 4365245, at *3 (D. Del. Sept. 3, 2014) (quoting *Alice*, 134 S. Ct. at 2358).  The '065 patent claims are therefore invalid under § 101.

**B.**     **The Asserted Claims Of The '510 Patent Are Directed To Patent-Ineligible Subject Matter And Are Invalid Under § 101**

Amdocs asserts claims 16, 17, and 19 of the '510 patent.  Claim 16, the only asserted independent claim, reads as follows:

> 16.  A computer program product stored in a computer readable medium for reporting on a collection of network usage information from a plurality of network devices, comprising:

10

computer code for collecting network communications usage information in real-time from a plurality of network devices at a plurality of layers;

computer code for filtering and aggregating the network communications usage information;

computer code for completing a plurality of data records from the filtered and aggregated network communications usage information, the plurality of data records corresponding to network usage by a plurality of users;

computer code for storing the plurality of data records in a database;

computer code for submitting queries to the database utilizing predetermined reports for retrieving information on the collection of the network usage information from the network devices; and

computer code for outputting a report based on the queries;

wherein resource consumption queries are submitted to the database utilizing the reports for retrieving information on resource consumption in a network; and

wherein a resource consumption report is outputted based on the resource consumption queries.

Dependent claim 17 adds code to seek and obtain network usage reports, while dependent claim 19 adds code to generate an alert upon the occurrence of an event.

The abstract idea of the asserted claims of the '510 patent is the creation of a database of network usage information that can be queried to retrieve information on the collection of network usage information.  Reports can be generated based on the queries and alerts can be set.

The asserted claims recite nothing more than a "computer program product" that computerizes and makes more efficient steps that could be performed with a pen and paper, a file cabinet, and a calculator.  Indeed, the '510 patent concedes that the prior art included the use by phone companies of batch processed data relating to telephone use.  '510 Patent, Col. 2:1-12. The '510 patent concedes that even in prior art processing telephone records "requires a significant amount of computing power" (*id*. at 2:12), therefore, "the computer implementation did not supply the necessary inventive concept." *Alice*, 134 S. Ct. at 2357.  The '510 patent also

11

concedes that the claimed reports may be generated using "off-the-shelf graphical reporting packages" ('510 Patent, Col. 4:24-25) and that "[t]he system supports a non-proprietary database format" that "run[s] on any of a number of commercially available databases." *Id*. at 10:1-3.

Here, as in *Alice*, the claims are drawn to "a method of organizing human activity." *Alice*, 134 S. Ct. at 2356. Imagine that a telephone user's data is compiled by a human being after each call on a family's three cellular telephones. Each "data compilation" is put into a file cabinet. Each month the user's "data compilations" are taken from the file cabinet and a summation page is created and placed back into the user's file. These summation pages can later be reviewed to answer questions, make a "report," or see if an alert should be sent to the user.

The elements of the asserted claims of the '510 patent, considered individually or as an ordered combination, do nothing more than purport to limit this abstract idea to the particular technological environment of computer network usage, implemented on a generic computer via conventional computer code. '510 Patent, Col. 2:15-16 ("[W]hat is desired is a system that allows for accounting and billing of transactions on IP based networks."). That is far from what is required to transform the patent-ineligible abstract idea into a patent-eligible invention. *Alice*, 134 S. Ct. at 2358-59 ("the prohibition against patenting abstract ideas cannot be circumvented by attempting to limit the use of the idea to a particular technological environment").

The claim language belies any assertion that the claimed subject matter is patent-eligible because it enables the creation of a large database. Just as in *Planet Bingo*, the claims of the '510 patent require, at most, two network devices ("a plurality") and two so-called layers ("a plurality"). *See Planet Bingo, LLC v. VKGS LLC*, No. 2013–1663, 2014 WL 4195188, at *2 (Fed. Cir. August 26, 2014) (rejecting Planet Bingo's argument that their computer program could not be carried out manually because it handles thousands or millions of Bingo numbers,

12

and asserting that "[a]t most, the claims require 'two sets of Bingo numbers,' 'a player,' and 'a manager'"). The claim language thus falls far short of reciting an invention that necessarily handles thousands or millions of network usage information packages. *See id.*

In short, the '510 patent purports to claim nothing more than the use of generic computer power to make more efficient what could be done, and what has long since been done, by a human. The asserted claims are, therefore, invalid under § 101.

## C.    The Asserted Claims Of The '984 Patent Are Directed To Patent-Ineligible Subject Matter And Are Invalid Under § 101

The '984 patent is a sister to the '510 and '065 patents. Asserted independent method claim 1, which is representative of all asserted independent claims, reads as follows:

> 1. A method for reporting on the collection of network usage information from a plurality of network devices, comprising:
>
> (a)  collecting network communications usage information in real-time from a plurality of network devices at a plurality of layers utilizing multiple gatherers each including a plurality of information source modules each interfacing with one of the network devices and capable of communicating using a protocol specific to the network device coupled thereto, the network devices selected from the group consisting of routers, switches, firewalls, authentication servers, web hosts, proxy servers, netflow servers, databases, mail servers, RADIUS servers, and domain name servers, the gatherers being positioned on a segment of the network on which the network devices coupled thereto are positioned for minimizing an impact of the gatherers on the network;
>
> (b)  filtering and aggregating the network communications usage information;
>
> (c)  completing a plurality of data records from the filtered and aggregated network communications usage information, the plurality of data records corresponding to network usage by a plurality of users;
>
> (d)  storing the plurality of data records in a database;
>
> (e)  allowing the selection of one of a plurality of reports for reporting purposes;

13

(f)  submitting queries to the database utilizing the selected reports for retrieving information on the collection of the network usage information from the network devices; and

(g)  outputting a report based on the queries.

Independent claim 13 recites a computer program product that does nothing more than execute the method of claim 1.  Dependent claim 2 adds the submission of queries to the database using the reports; dependent claim 6 adds the generation of an alert; and dependent claim 8 adds an alert for the end of services.

Much like the '510 patent, the abstract idea recited in the claims of the '984 patent is the creation of a "queryable" database of network usage information.  As discussed above, the creation of a database from various sources of information, and the ability to query that database and generate reports and alerts therefrom, is conventional and decades old.

The elements of the asserted claims of the '984 patent add nothing more than generic and conventional computer hardware, regardless of whether they are considered one-at-a-time or holistically.  The claim recites a litany of well-known "network devices," none of which is performing anything other than its typical and ordinary function.  The patent admits that "[t]he network devices represent *any devices* that could be included in a network."  '984 Patent, Col. 4:49-50 (emphasis added).  In this respect, the '984 patent is merely the computerization of a process that could be performed by a human being in real time:  (a) two "log files" from two "mail servers" (*see id.* at 4:59-60; Claim 1, Col. 15:43) are printed out ("gathered") by a human operator immediately after each mail server's session; (b) the information from the log files is "filtered" and "aggregated" by the operator; (c) the filtered/aggregated information is used to fill out paper data records; (d) the data records are placed in a filing cabinet; and (e) the operator can examine the records and make various reports that answer questions or allow the operator to generate an alert.

14

Similarly, the '984 patent concedes that in the prior art individual telephone usage records were captured, aggregated, and correlated through batch processing. *Id.* at 1:64-67. The '984 patent purports to claim as a patent-eligible invention computerizing what telephone companies have long since done for their customers. *Id.* at 2:15-16. Yet, the '984 patent requires no new hardware to accomplish this object, and offers no technological advance when these generic computer operations are performed on sources of network usage information rather than solely on telephone call records. To the contrary, the '984 patent recites using the same "off-the-shelf" and "commercially available" computer hardware and software as the '510 patent. *See id.* at 4:52-53, 9:37-39.

In sum, the claims of the '984 patent do nothing more than "simply instruct the practitioner to implement the abstract idea of" building a database of network usage information "on a generic computer." *Alice*, 134 S. Ct. at 2359. The functions performed by the computer as ordered by each specified method element are basic functions of a computer. Nothing patent-eligible is added; the '984 patent is invalid under 35 U.S.C. § 101.

D.    **The Asserted Claims Of The '797 Patent Are Directed To Patent-Ineligible Subject Matter And Are Invalid Under § 101**

The '797 patent is a "continuation-in-part" sister to the '065, '984, and '510 patents. Amdocs asserts claims 1, 2, 7, 8, and 19. Corrected independent claim 1, which is representative of the asserted claims, reads as follows:

1. A method for generating a single record reflecting multiple services for accounting purposes, comprising:

   (a) identifying a plurality of services carried out over a network;

   (b) collecting data describing the plurality of services; and

   (c) generating a single record including the collected data, wherein the single record represents each of the plurality of services;

15

wherein the services include at least two services selected from a group consisting of a hypertext transfer protocol (HTTP) session, an electronic mail session, a multimedia streaming session, a voice over Internet Protocol (IP) session, a data communication session, an instant messaging session, a peer-to-peer network application session, a file transfer protocol (FTP) session, and a telnet session;

wherein the data is collected utilizing an enhancement procedure defined utilizing a graphical user interface by:

listing a plurality of available functions to be applied in real-time prior to end-user reporting,

allowing a user to choose at least one of a plurality of fields, and

allowing the user to choose at least one of the listed functions to be applied to the chosen field in real-time prior to the end-user reporting.

The "graphical user interface" ("GUI") limitations appear in all claims, having been added by a certificate of correction. Claim 2 depends from claim 1 and further specifies sending the single record to a "Business Support System." Independent claim 7 is directed to the computer code that implements the method of claim 1; dependent claim 8 mirrors dependent claim 2. Independent method claim 19 likewise tracks claim 1.

The abstract idea of the '797 patent is the creation of a single record for accounting purposes from information collected from two of the specified services. The creation of one record from two information sources, however, is an abstract concept for organizing human activity. Indeed, such simplification is a "fundamental economic practice" and a patent-ineligible abstract idea. *See id.* at 2356; *Bilski*, 130 S. Ct. 3231.

The recitation of a GUI to select the data fields to be processed cannot save the claims. As explained below, other courts have already found that a GUI is simply the ubiquitous way one visually interacts with a computer using windows, icons, and menus. A GUI is the interface between a user and a computer that involves, for example, the use of a mouse-controlled computer screen cursor to select options from menus, or start programs by clicking icons. In

16

short, a GUI has been the standard, conventional, generic way to operate a personal computer for decades.

For example, the inclusion of a "User Interface" in the patent-ineligible claims in *DietGoal* was unavailing. *See DietGoal Innovations, LLC v. Bravo Media, LLC*, No. 13 Civ. 8391 (PAE), 2014 WL 3582914, at *41-45 (S.D.N.Y July 8, 2014) ("The addition of a computer to perform calculations, retrieve data, and ***visually display images*** is nothing more than 'post-solution activity; that cannot render the process patentable.") (emphasis added).

Likewise, the use of a GUI in the claims in *Loyalty Conversion* did not render those claims patent-eligible. *Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*, No. 2:13-cv-655, 2014 WL 4364848, at *9 (E.D. Tex. Sept. 2, 2014). Judge Bryson's cogent explanation why the *Loyalty Conversion* "GUI claims" were invalid under § 101 applies with equal force to the asserted claims of the '797 patent:

> The role of the computer in the claims of the '023 and '550 patents is limited to the basic functions of a generic computer, including storing and displaying information, performing simple arithmetic calculations, and enabling a customer to make e-commerce purchases from a vendor. Nothing in the claims purports to improve the functioning of the computer itself, and the computer components of the claims add nothing that is not already present in the steps of the claimed methods, other than the speed and convenience of basic computer functions such as calculation, communication, and the display of information.

*Id*.

Here, the role of the computer in the asserted claims of the '797 patent is limited to the basic functions of a generic computer, including storing and displaying information, performing arithmetic calculations, and enabling a user to use a GUI in conventional fashion to choose functions and fields from a menu. The '797 patent recites using convention software, "such as the Microsoft Windows NT or Windows Operating System (OS), the IBM OS/2 operating system, the MAC OS, or UNIX operating system." '797 Patent, Col. 3:43-45. Northing claimed

17

by the patent improves the computer, and the use of the GUI adds nothing to the abstract idea other than the speed and convenience of basic, long-known computer functions. The asserted claims of the '797 patent are thus invalid under § 101.

## IV.    CONCLUSION

For the foregoing reasons, Openet respectfully requests that the Court grant judgment on the pleadings in Openet's favor and hold the asserted claims invalid as directed to unpatentable subject matter.


Dated: September 26, 2014                            Respectfully submitted,


                                                     */s/ Brian H. Pandya*
                                                     James H. Wallace, Jr. (admitted *pro hac vice*)
                                                     Brian H. Pandya (VSB No. 72233)
                                                     WILEY REIN LLP
                                                     1776 K Street NW
                                                     Washington, D.C. 20006
                                                     Telephone: (202) 719-7000
                                                     Facsimile: (202) 719-7049

                                                     *Counsel for Defendants Openet Telecom, Inc.*
                                                     *and Openet Telecom Ltd.*

18

**CERTIFICATE OF SERVICE**

I hereby certify that on this 26th day of September, 2014, I caused the foregoing document to be served on the following counsel for Amdocs (Israel) Limited via the Court's CM/ECF system:

Gregory H. Lantier, Esq.
James L. Quarles, III
WilmerHale LLP
1875 Pennsylvania Avenue, N.W.
Washington, DC 20006
Gregory.Lantier@wilmerhale.com
James.Quarles@wilmerhale.com


*/s/ Brian H. Pandya*
Brian H. Pandya

19