**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | |
|---|---|
| AMDOCS (ISRAEL) LIMITED, an Israeli Corporation, | **Case No. 1:10-cv-910 (LMB/TRJ)** |
| Plaintiff, | |
| v. | |
| OPENET TELECOM, INC., a Delaware Corporation, and OPENET TELECOM LTD., an Irish Corporation, | JURY TRIAL DEMANDED |
| Defendants. | |

**<u>PLAINTIFF'S OPPOSITION TO DEFENDANTS'
MOTION FOR JUDGMENT ON THE PLEADINGS</u>**

**TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................... 1

II.   BACKGROUND .................................................................................................... 3

      A.    Procedural History ..................................................................................... 3
      B.    The Patented Inventions............................................................................. 4
            1.    The Problem in the Prior Art ............................................................ 4
            2.    Amdocs' Patented Solution............................................................... 6

III.  ARGUMENT........................................................................................................ 7
      A.    Openet's Motion Is Barred by the Law of the Case................................... 7
      B.    The Patents-In-Suit Are Directed to Patent-Eligible Subject Matter................... 10
            1.    The Asserted Patents Are Not Directed to an Abstract Idea..................... 11
                  a)    The '065 Patent................................................................. 15
                  b)    The '984 and '510 Patents ................................................ 16
                  c)    The '797 Patent................................................................. 19
            2.    Even Were the Patents Directed to an Abstract Idea, the Additional
                  Elements in the Claims Add "Significantly More" Than
                  Conventional Steps ..................................................................... 20
                  a)    The '065 Patent................................................................. 22
                  b)    The '984 and '510 Patents ................................................ 24
                  c)    The '797 Patent................................................................. 26

IV.   CONCLUSION................................................................................................... 27

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Alice Corp. Pty. Ltd. v. CLS Bank International*,
134 S. Ct. 2347 (2014)........................................................................................... passim

*Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*,
761 F.3d 1329 (Fed. Cir. 2014)........................................................................1, 7, 11, 16

*AutoForm Engineering GMBH v. Engineering Technology Associates, Inc.*,
No. 10-CV-14141, 2014 WL 4385855 (E.D. Mich. Sept. 5, 2014)........................................25

*Bancorp Services, L.L.C. v. Sun Life Assurance Co. of Canada (U.S.)*,
687 F.3d 1266 (Fed. Cir. 2012), *cert. denied*, 134 S. Ct. 2870 (2014) ...................................24

*Bilski v. Kappos*,
130 S. Ct. 3218 (2010)........................................................................................... passim

*buySAFE, Inc. v. Google, Inc.*,
765 F.3d 1350, 2014 WL 4337771 (Fed. Cir. Sept. 3, 2014) ...........................................13, 26

*CMG Financial Services, Inc. v. American Airlines, Inc.*,
No. 11-cv-10344, slip op. (C.D. Cal. Aug. 29, 2014)...............................................................14

*Coles v. Deltaville Boatyard, LLC*,
No. 3:10cv491, 2011 WL 1750896 (E.D. Va. May 6, 2011).....................................................8

*Comcast IP Holdings I, LLC v. Sprint Communications Co. L.P.*,
No. 12-CV-205, 2014 WL 3542055 (D. Del. July 16, 2014) ...................................................13

*Cybersource Corp. v. Retail Decisions, Inc.*,
620 F. Supp. 2d 1068 (N.D. Cal. 2009) ...................................................................................9

*CyberSource Corp. v. Retail Decisions, Inc.*,
654 F.3d 1366 (Fed. Cir. 2011).............................................................................................13

*Diamond v. Diehr*,
450 U.S. 175 (1981)..........................................................................................................21, 23

*DietGoal Innovations LLC v. Bravo Media LLC*,
No. 13-CV-8391, 2014 WL 3582914 (S.D.N.Y. July 8, 2014).....................................13, 26, 27

*Digitech Image Technologies, LLC v. Electronics for Imaging, Inc.*,
758 F.3d 1344 (Fed. Cir. 2014)..............................................................................................16

*Eclipse IP LLC v. McKinley Equipment Corp.*,
No. 14-CV-154, 2014 WL 4407592 (C.D. Cal. Sept. 4, 2014) ...............................................14

*Every Penny Counts, Inc. v. Wells Fargo Bank, N.A.*,
No. 8:11-CV-2826, 2014 WL 4540319 (M.D. Fla. Sept. 11, 2014)........................................14

*Ford-Clifton v. Department of Veterans Affairs*,
661 F.3d 655 (Fed. Cir. 2011)...................................................................................................8

*Helios Software, LLC v. SpectorSoft Corp.*,
No. 12-CV-081, 2014 WL 4796111 (D. Del. Sept. 18, 2014)........................................ passim

*Kori Corp. v. Wilco Marsh Buggies & Draglines, Inc.*,
761 F.2d 649 (Fed. Cir. 1985)...................................................................................................8

*Le Roy v. Tatham*,
55 U.S. 156 (1852)...................................................................................................................15

*Loyalty Conversion System Corp. v. America Airlines, Inc.*,
No. 2:13-CV-655, 2014 WL 4364848 (E.D. Tex. Sept. 3, 2014)......................................14, 26

*Open Text S.A. v. Alfresco Software Ltd*,
No. 13-CV-04843, 2014 WL 4684429 (N.D. Cal. Sept. 19, 2014) ........................................14

*Planet Bingo, LLC v. VKGS LLC*,
No. 2013-1663, 2014 WL 4195188 (Fed. Cir. Aug. 26, 2014) .........................................13, 26

*Research Corp. Technologies, Inc. v. Microsoft Corp.*,
627 F.3d 859 (Fed. Cir. 2010)..............................................................................................9, 12

*SiRF Technology, Inc. v. lnternational Trade Commission*,
601 F.3d 1319 (Fed. Cir. 2010)..................................................................................... *passim*

*United States v. Aramony*,
166 F.3d 655 (4th Cir. 1999) .................................................................................................7, 8

*Walker Digital, LLC v. Google, Inc.*,
No. 11-CV-318, 2014 WL 4365245 (D. Del. Sept. 3, 2014)..................................................14

*Winston v. Pearson*,
683 F.3d 489 (4th Cir. 2012) ....................................................................................................7

**STATUTES**

35 U.S.C. § 101...................................................................................................................... passim

**OTHER AUTHORITIES**

1 J. Moore, Federal Practice ¶ 0.404[1] (1984) ............................................................................8

MCGRAW-HILL DICTIONARY OF SCIENTIFIC AND TECHNICAL TERMS (6th ed. 2003) .................4, 5

USPTO Memorandum, *Preliminary Examination Instructions in view of the Supreme Court Decision in Alice Corporation Pty. Ltd. v. CLS Bank International, et al.* (June 25, 2014)...........................................................................................................2, 9

## I.    INTRODUCTION

As this Court and the Federal Circuit have both already recognized, the asserted patents are directed to concrete improvements to a specific, highly complex technology.  The patents claim methods and systems in which "raw usage logs for [network] services . . . are generated by several different network devices that may exist in different network levels.  The patented system collects these raw usage data records from their diffuse locations throughout the network and through appropriate filtering, aggregation, correlation, and enhancement transforms them into a format suitable for accounting, called 'detail records' ('DRs')."  *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 761 F.3d 1329, 1331-32 (Fed. Cir. 2014) (quoting Mem. Op., Dkt. No. 259 at 6).  Under this Court's claim construction of "enhance" and "completing"—which the Federal Circuit affirmed—the claims further require that this enhancement take place "***in a distributed fashion***," or "close to the source of the network usage information."  *See* Dkt. No. 259 at 48-49, 58 (emphasis added); *see also Amdocs*, 761 F.3d at 1340.

With the apparent desire to further delay trial of Amdocs' infringement claims, however, Openet ignores these prior decisions and the patents, asserting, for the second time, that the patents claim nothing more than an "abstract concept."  Using Federal Rule of Civil Procedure 12(c), Openet now seeks to re-litigate its own prior Rule 56(a) summary judgment motion that the Court denied.  Openet couples this request with a request that all further activity in this case be postponed in the meantime.  *See* Joint Proposed Pre-Trial Plan, Dkt. No. 296 at 6-7.

Openet's motion should be denied for both procedural and substantive reasons.  Procedurally, the arguments Openet now makes are barred by the law of the case doctrine.  The identical arguments were briefed by the parties and rejected by this Court over two years ago.  Openet has not met—and cannot meet—its burden to show that the Supreme Court's *Alice*

- 1 -

decision contradicts or significantly changes the law as applied to the already-rejected arguments Openet now seeks to re-raise.

Substantively, Openet's argument lacks merit. At base, Openet's argument amounts to a broad and unsupportable contention that any patent claiming an invention implemented by software is invalid (or at least presumptively invalid) after the U.S. Supreme Court's decision in *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014). *See, e.g.*, Defs' Mem. in Support of Their Mot. for J. on the Pleadings ("Openet Mem."), Dkt. No. 294 at 1, 6. But the *Alice* Court itself made clear that "[t]here is no dispute that a computer is a tangible system (in § 101 terms, a 'machine'), or that many computer-implemented claims are formally addressed to patent-eligible subject matter." *Alice*, 134 S. Ct. at 2358-59. Following *Alice*, the U.S. Patent and Trademark Office ("PTO") has likewise rejected the argument Openet now makes. *See* Ex. A, PTO Memorandum, *Preliminary Examination Instructions in view of the Supreme Court Decision in Alice Corporation Pty. Ltd. v. CLS Bank International, et al*. (June 25, 2014) ("PTO Memorandum") at 1 ("Notably, *Alice Corp.* neither creates a *per se* excluded category of subject matter, such as software or business methods, nor imposes any special requirements for eligibility of software or business methods.").

Far from an "abstract idea," the claims of the asserted patents are directed to collecting "raw usage" information from diffuse sources on a packet-based system such as the Internet, and using the collected information to build better network accounting records. Further, the claims set forth specific improvements to network accounting technology: among other things, they include limitations requiring computer code for: (i) collecting usage information from multiple sources in a multi-layered network system in real-time using multiple protocols; (ii) correlating often ephemeral data regarding network usage from multiple sources; (iii) enhancing network

- 2 -

accounting records utilizing a particular architecture, *i.e.*, in a "distributed fashion;" (iv) further transforming data by filtering and aggregating it; (v) generating reports regarding network usage information; and (vi) generating particular records that represent a plurality of packet-based services. *None* of these claim limitations is capable of being performed by a human alone. Ultimately, Openet has not come close to demonstrating by clear and convincing evidence that the claims cover patent ineligible "business methods," or methods of organizing human activity, or abstract principles fundamental to the ubiquitous use of the Internet or computers generally. The claims are not invalid under 35 U.S.C. § 101—this Court should deny Openet's motion.

## II.     BACKGROUND

### A.     Procedural History

In its April 29, 2011 Consent Scheduling and Final Pretrial Order (Dkt. No. 79), this Court ordered the parties to file summary judgment and *Markman* motions by May 26, 2011.  On that date, Openet moved for summary judgment on the issues of infringement and invalidity. Dkt. Nos. 95-96.  Openet asserted, among other things, that Claim 1 of U.S. Patent No. 7,631,065 ("'065 patent," attached as Ex. 1 to Openet Mem.), Claim 7 of U.S. Patent No. 6,836,797 ("'797 patent," attached as Ex. 4 to Openet Mem.), Claim 13 of U.S. Patent No. 6,947,984 ("'984 patent," attached as Ex. 3 to Openet Mem.), and Claim 16 of U.S. Patent No. 7,412,510 ("'510 patent," attached as Ex. 2 to Openet Mem.) "embrace non-patentable subject matter and are invalid under 35 U.S.C. § 101" because these "computer readable media claims are directed to an abstract idea."  Dkt. No. 96 at 16-17 (*citing Bilski v. Kappos*, 130 S. Ct. 3218, 3230 (2010)).

On September 27, 2012, the Court denied Openet's summary judgment motion with respect to invalidity because of "material issues of fact in dispute."  Order, Dkt. No. 248 at 1-2. The Court granted Openet's motion with respect to non-infringement, stating that its "ruling will

- 3 -

leave only the issue of patent invalidity for trial." *Id.* at 2.  It directed the parties to advise the Court "whether they want to take the invalidity claims to trial." *Id.*

On January 22, 2013, the Court issued a supporting Memorandum Opinion, stating that "[a]lthough there remain disputed issues of material fact as to whether the patents-in-suit are invalid, the Court has determined upon further reflection that in light of its ruling" of no infringement, "the part of the Order issued on September 27, 2012, that gave defendants the option to pursue their invalidity claims will be vacated and the invalidity claims will be dismissed without prejudice."  Dkt. No. 259 at 1-2.  The Court further explained that its summary judgment ruling was based on the construction of three claim terms—"enhance" ('065 patent), "single record" ('797 patent), and "completing" ('984 and '510 patents).

Amdocs appealed the Court's ruling on the issues of infringement and claim construction. On August 1, 2014, the United States Court of Appeals for the Federal Circuit ("Federal Circuit") affirmed the Court's constructions of "enhance" and "completing," reversed the construction of "single record," and vacated summary judgment as to infringement.  Dkt. No. 282.  The mandate issued from the Federal Circuit on September 8, 2014.  Dkt. No. 284.

**B.      The Patented Inventions**

**1.      The Problem in the Prior Art**

Unlike traditional telephone systems, packet-based[1] computer networks, such as the Internet, are not designed to allow for easy record-keeping and monitoring of usage.  As illustrated below, even during the transmission of a single web-page of information over the Internet, multiple packets of information (shown as green bars) travel along different paths

---

[1] A packet is "[a] short section of data of fixed length that is transmitted as a unit."  Ex. B, MCGRAW-HILL DICTIONARY OF SCIENTIFIC AND TECHNICAL TERMS ("MCGRAW-HILL TECHNICAL DICTIONARY")) 1514 (6th ed. 2003); *see also* Declaration of Dr. Ellen W. Zegura, dated October 10, 2014 ("Zegura Decl.") ¶ 21).

between one point and another, making various stops along the way.  Zegura Decl. ¶¶ 21-22.

Only upon reaching their final destination are they then reassembled in the proper order.  *Id.* ¶ 21.



Furthermore, unlike traditional circuit-switched telecommunications systems, where customers are assigned a fixed identifier (*i.e.*, a telephone number), Internet Protocol ("IP") addresses[2] assigned to Internet devices are often temporary, and may vary from one period of use to the next.  *Id.* at ¶¶ 23-24.  In other words, the "to" and "from" IP addresses that are used to "mail" packets are often temporarily assigned to one user, and then reassigned to a different user.  *Id.* ¶ 24.

Moreover, as packets of data travel through the IP network, they encounter a variety of network devices, such as routers, authentication servers, Web hosts, domain name system ("DNS") servers, and others.  *Id.* ¶¶ 25-26.  Each such network device registers some

---

[2] An IP address is a numeric address that identifies the location of a computer or device to the network.  *See* Ex. B, MCGRAW-HILL TECHNICAL DICTIONARY at 1115.  It does not represent any physical location; *see also* Zegura Decl. ¶ 23.

information about the packet, but no single device registers enough information to enable creation of a record akin to a standard switch-based Call Detail Record.  *Id.* ¶ 26.  Further complicating the process, different network devices on the Internet operate using different languages, or protocols, resulting in difficulties with assimilating data collected from multiple sources.  '065 patent, 6:27-30; *see also* Zegura Decl. ¶ 26.

### 2.    Amdocs' Patented Solution

The inventors of Amdocs' patents solved the problems associated with generating complete and accurate records for use of packet-based network services by inventing technology that enables ISPs to track each and every transaction and match information about each transaction to a particular user's account.  '065 patent, 2:11-12.  For example, where a customer accesses a particular webpage, the ISP can track information such as the user's IP address, the duration of the session (*i.e.*, how long the user accessed the page), and the types of transactions that the user conducted during the session, such as downloading videos or images, using VoIP, sending email, etc.

Consistent with this purpose, the patents claim methods, systems, and computer program products that allow ISPs to create detailed and accurate usage-based accounting records, known as detail records ("DRs"), by capturing information from a packet-based network about each customer's use of network services.  *Id.* at 3:30-33.  The software is configurable upon installation to permit the ISP to define what types of information it wishes to collect regarding transactions in the network.  *Id.* at 9:7-10.  The system then generates DRs for each user by collecting raw network usage data, such as IP addresses, number of packets transferred, etc., from network devices; correlating the collected data with the account of a particular user; and, where the collected information does not contain all the information needed for billing and/or accounting, enhancing the collected information to generate a complete record.

- 6 -

Further, as this Court concluded during claim construction, the asserted claims relate specifically to a "distributed 'hub and spoke' architecture" that has "associated efficiency gains" over other data collection and management systems that are centralized. Dkt. No. 259 at 25, 37. Whereas earlier systems "processed all of the network usage information at a single, central location," the patented system "minimizes network impact by collecting and processing data close to its source." *Id.* at 36 (quoting '984 patent, 3:33-34; '510 patent, 3:64-65; '065 patent, 3:62-63). The Court has already recognized that collecting and processing data close to its source has the tangible benefit of "'reducing the volume of data sent on the network to the CEM,' thereby 'eliminat[ing] capacity bottlenecks [and] improving the scalability and efficiency of the system.'" *Id.* (quoting '065 patent, 7:9-12; '510 patent, 7:9-12; '984 patent, 6:47-50). The Court emphasized that "[p]articularly because it is the feature that distinguishes the patented system from preexisting technology, the distributed processing of network records is a key component of the '065, '510, and '984 patents." *Id.* at 38. The Court of Appeals affirmed this claim construction. *Amdocs*, 761 F.3d at 2360.

## III.   ARGUMENT

### A.   Openet's Motion Is Barred by the Law of the Case

This Court previously denied Openet's motion for summary judgment of invalidity on the basis of 35 U.S.C. § 101. Openet now seeks not only to re-litigate this precise issue, but to do so ***with the identical arguments that it previously made***. The law of the case doctrine clearly precludes such a motion, except under "extraordinary circumstances" not present here. *Winston v. Pearson*, 683 F.3d 489, 498 (4th Cir. 2012) (internal quotation marks omitted) ("[W]e will not reconsider [a] previous holding absent extraordinary circumstances."); *United States v. Aramony*, 166 F.3d 655, 661 (4th Cir. 1999) ("([T]he doctrine [of the law of the case] posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in

- 7 -

subsequent stages in the same case." (alteration in original)); *Coles v. Deltaville Boatyard, LLC*, No. 3:10cv491, 2011 WL 1750896 (E.D. Va. May 6, 2011) (rejecting defendant's summary judgment argument based upon court's prior legal conclusion on defendant's motion to dismiss, with regard to same issue); *see also Ford-Clifton v. Dep't of Veterans Affairs*, 661 F.3d 655, 659 (Fed. Cir. 2011) ("Under [the law of the case] doctrine, [i]ssues decided at an earlier stage of litigation, either explicitly or by necessary inference from the disposition, constitute the law of the case." (internal quotation marks omitted)); *Kori Corp. v. Wilco Marsh Buggies & Draglines, Inc.*, 761 F.2d 649, 657 (Fed. Cir. 1985) ("Issues decided at an earlier stage of litigation, either explicitly or by necessary inference from the disposition, constitute the law of the case" and courts should generally "refuse to reopen what has been decided." (citing 1 J. Moore, Federal Practice ¶ 0.404[1], n.15 (1984)) (internal quotation marks omitted)).

Under the law of the case doctrine, a prior decision should not be revisited by the Court, unless: "(1) a subsequent trial produces substantially different evidence, (2) controlling authority has since made ***a contrary decision of law*** applicable to the issue, or (3) the prior decision was clearly erroneous and would work manifest injustice." *Aramony*, 166 F.3d at 661 (emphasis added) (internal quotation marks omitted). While Openet argues that the Supreme Court's decision in *Alice*, 134 S. Ct. 2347, represented a "fundamental change in the law of § 101 patent eligibility" (Openet Mem. at 2), it has failed to point to a single way in which *Alice* altered prior law, much less any way in which *Alice* is a "contrary decision of law" with respect to the pre-2013 decisions that were in effect at the time Openet filed for summary judgment on the identical issue.

In fact, the *Alice* decision itself confirms that it was in line with existing precedent and did not represent a "contrary" change in the Supreme Court or the Federal Circuit's pre-existing

- 8 -

§ 101 jurisprudence. *See* 134 S. Ct. at 2350 (re-affirming *Bilski* and other prior decisions and concluding that "[i]t follows from our prior cases, and *Bilski* in particular, that the claims at issue here are directed to an abstract idea."). As the PTO has observed, after *Alice*, "the basic inquiries to determine subject matter eligibility **remain the same**." Ex. A at 2 (PTO Memorandum) (emphasis added).

Indeed, the very precedents on which Openet relied in bringing its unsuccessful summary judgment motion were expressly re-affirmed in *Alice*. In its May 26, 2011 summary judgment brief, Openet made precisely the same § 101 invalidity arguments it makes now—and even ***cited*** the district court decision in *Alice* that the Supreme Court recently affirmed:

> Second, the computer readable media claims are directed to an abstract idea. *See Bilski v. Kappos*, 130 S. Ct. 3218, 3230 (2010). The claims do not "sufficient[ly] tie a process claim to a particular machine." *Cybersource Corp. v. Retail Decisions, Inc.*, 620 F. Supp.2d 1068, 1077 (N.D. Cal. 2009). As a practical matter, network accounting and usage information must be processed on a computer. ***The claims thus recite "an obvious mechanism for permitting a solution to be achieved more quickly, i.e., through the utilization of a computer for performing calculations." CLS Bank Int'l v. Alice Corp. Pty, Ltd., 2011 U.S. Dist. LEXIS 23669, \*61 (D.D.C. Mar. 9, 2011)***. Likewise, the claims recite methods that "[o]n their face . . . simply obtain and compare intangible data" relating to the usage of telecommunications services without ever transforming the data. *Cybersource Corp. v. Retail Decisions, Inc.*, 620 F. Supp. 2d 1068, 1073 (N.D. Cal. 2009); s*ee also Glory Licensing LLC v. Toys 'R' Us, Inc.*, No. 09-4252, D.I. 55 at 8 (D.N.J. May 16, 2011) (invalidating patents that "claim processes involving the extraction of information entered into and stored in a document or file and the formatting and transmission of that information to an application program").

Dkt. No. 96 at 17 (emphasis added). In response to Openet's assertions, Amdocs argued, as it does again in this submission (*infra* at Section B), that "the inventions have 'specific application or improvement to technologies in the marketplace'—namely, computer networks (*quoting Research Corp. Techs., Inc. v. Microsoft Corp.*, 627 F.3d 859, 869 (Fed. Cir. 2010)), that "the authorities cited by Openet relate to patents claiming business methods that happened to employ a computer," unlike the patents here, where "a computer network is 'a machine and is integral to

each of the claims at issue,'" (quoting *SiRF Tech., Inc. v. lnt'l Trade Comm'n.*, 601 F.3d 1319, 1332 (Fed. Cir. 2010)), and that "the disputed claims require that the claimed software program *transform* records by 'enhancing' the data in the record." Dkt. No. 111 at 14 (emphasis in original).

Following three rounds of briefing and a hearing, the Court issued an order in which it found material issues of fact in dispute as to invalidity, such that its ruling would "leave only the issue of patent invalidity for trial." Dkt. No. 248 at 2. That ruling became the law of the case. *See id.* Openet's current motion is procedurally barred.

**B.      The Patents-In-Suit Are Directed to Patent-Eligible Subject Matter**

Even if the law of the case doctrine were not dispositive of Openet's motion (it is), Openet's arguments are readily rejected on the merits. As explained in *Alice*, a patent claim is invalid as not directed to patent-eligible subject matter only if: (1) it is directed to an "abstract idea" rather than a tangible improvement to a specific technology, ***and*** (2) the limitations of the claim do not add "significantly more" than well-known, conventional features to that abstract idea. 134 S. Ct. at 2355.[3] Neither of these conditions is met by the asserted claims.[4] At a

---

[3] As discussed in *Alice*, courts should first "determine whether the claims at issue are directed to one of those patent-ineligible concepts"—laws of nature, natural phenomena, or abstract ideas. *Alice*, 134 S. Ct. at 2355. If so, then courts must "consider the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements [in the claims] 'transform the nature of the claim' into a patent-eligible application," *i.e.*, courts must "search for an 'inventive concept' . . . to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself." *Id.*

[4] Nor do the claims of the asserted patents pose a pre-emption concern, as they are not directed to an abstract idea. *See Alice*, 134 S. Ct. at 2354 ("We have described the concern that drives this exclusionary principle as one of pre-emption. See, *e.g., Bilski, supra,* at 611–612, 130 S.Ct. 3218 (upholding the patent 'would pre-empt use of this approach in all fields, and would effectively grant a monopoly over an abstract idea').") Indeed, the Court has construed the claims such that they do not monopolize even all types of "enhancement" of network accounting information, but rather only "distributed" enhancement, occurring "close to the source" of the network information.

minimum, material factual disputes preclude judgment on the pleadings.

### 1.      The Asserted Patents Are Not Directed to an Abstract Idea

The asserted patents do not claim an abstract concept.  Instead, as already recognized by this Court and the Federal Circuit, they claim a specific technological improvement: the "transform[ation] . . . into a format suitable for accounting" of "raw usage data records" through "filtering, aggregation, correlation, and enhancement." *Amdocs*, 761 F.3d at 1331 (quoting Dkt. No. 259 at 6).  Moreover, this Court's claim construction confirms that the claims are limited to a concrete improvement to specific technology: enhancement of raw network usage records "in a distributed fashion," *i.e.,* "close to the source of the network usage information."  *See* Dkt. No. 259 at 48-49, 58; *see also Amdocs*, 761 F.3d at 1340; Zegura Decl. ¶¶ 34, 37, 46, 51, 60, 67, 76, 79, 94, 97, 110, 123, 134, 137, 146, 151, 161, 166.  Indeed, the Court identified this limitation as a "key component" of the claims.  Dkt. No. 259 at 38.

Openet's primary contention is that, post-*Alice*, courts have "repeatedly invalidated computerized data processing patents that are similar to Amdocs' asserted claims."  Openet Mem. at 5.  As explained more fully below, that is simply not the case.  Since *Alice*, several courts have invalidated computerized **business method** patent claims; no court has invalidated patent claims under 35 U.S.C. § 101 that are directed to specific improvements to a particular technology similar to the claims of the asserted patents.  Indeed, in the one post-*Alice* case where a court was asked to consider patent claims that are substantively similar to the asserted claims of Amdocs' patents, *Helios Software, LLC v. SpectorSoft Corp.*, No. 12-CV-081, 2014 WL 4796111 (D. Del. Sept. 18, 2014), the Court granted summary judgment that the patents **were not invalid** under § 101.

*Helios Software* involved patents "drawn to remotely monitoring data associated with an Internet session and controlling network access."  *Id.* at *17.  The court found that the claims

were not directed to "***fundamental truths or fundamental principles*** the patenting of which would pre-empt the use of basic tools of scientific and technological work," and that "***none of these limitations could be performed by a human alone***." *Id.* (emphasis added).  Accordingly, it held that the patents were not "drawn to an abstract idea." *Id.*  The court granted the Plaintiff's motion for summary judgment to dismiss the defendant's defense of lack of patentable subject matter. *Id.*

Here, as in *Helios Software*, the asserted claims are directed to methods, systems, and computer program products that "capture the content of an ongoing Internet communication session" in real time.  *Id.*; *see also* Dkt. No. 259 at 36 ("[T]he patented system 'minimizes network impact by collecting and processing data close to its source.'" (quoting '984 patent, 3:33-34; '510 patent, 3:64-65; '065 patent, 3:62-63)).  Indeed, "the distributed processing of network records is a ***key component*** of the '065, '510, and '984 patents." Dkt. No. 259 at 38 (emphasis added).  As discussed above, the asserted claims cannot be performed by a human alone; rather the claimed devices "play a significant part in permitting the claimed method to be performed." *SiRF Tech.*, 601 F.3d at 1333; *see also, e.g.*, Zegura Decl. ¶¶ 44, 49, 58, 65, 70, 90, 108, 120, 126, 144, 149, 159, 164, 175.  Thus, as in *Helios Software*, "[t]he invention[s] present[] functional and palpable applications in the field of computer technology," and are not directed to abstract ideas.  *Research Corp. Techs.*, 627 F.3d at 868.

The cases cited by Openet are inapposite, because the claims in those cases were directed to computerized "business methods," rather than to tangible technological improvements to existing technology like the inventions in Amdocs' patents.  For example, the patent at issue in *Bilski* claimed "the basic concept of hedging, or protecting against risk," which the Court determined was "a fundamental economic practice long prevalent in our system of commerce."

*Bilski*, 130 S. Ct. at 3231.  Similarly, in *Alice*, the claims were "drawn to the concept of intermediated settlement, i.e., the use of a third party to mitigate settlement risk," which the Court found to be "a building block of the modern economy . . . beyond the scope of § 101." *Alice*, 134 S. Ct. at 2356.  Indeed—and consistent with the cases cited in Openet's brief—post-*Alice*, the Federal Circuit has instructed that in determining "what type of matter the Court has held to come within the category of 'abstract idea,' … [t]he relevant Supreme Court cases are those which find an abstract idea in certain arrangements involving contractual relations," *i.e.*, methods of organizing human activity.  *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 2014 WL 4337771, at \*3 (Fed. Cir. Sept. 3, 2014); *see also Planet Bingo, LLC v. VKGS LLC*, No. 2013-1663, 2014 WL 4195188, at \*2 (Fed. Cir. Aug. 26, 2014) ("[M]anaging the game of bingo 'consists solely of mental steps which can be carried out by a ***human using pen and paper***.' . . . [N]ot only can these steps be 'carried out in existing computers long in use,' but they also can be '***done mentally***.'" (emphases added) (citations omitted)); *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1371 (Fed. Cir. 2011) ("[M]ethods which can be ***performed mentally***, or which are the equivalent of ***human mental work***, are unpatentable abstract ideas—the 'basic tools of scientific and technological work' that are open to all." (emphases added)).  The district court cases on which Openet relies confirm that the abstract ideas excluded from section 101 are those that encompass basic human activity or mental processes.[5]  *See* Openet Mem. at 5 n.3.

---

[5] *See Comcast IP Holdings I, LLC v. Sprint Commc'ns Co. L.P.*, No. 12-CV-205, 2014 WL 3542055, at \*4 (D. Del. July 16, 2014) ("A decision is a ***basic mental process*** upon which everyone relies. A decision may be performed, and generally is performed, entirely in the human mind.  Such processes are 'unpatentable . . . because computational methods which can be ***performed entirely in the human mind*** are the types of methods that embody the basic tools of scientific and technological work that are free to all men and reserved exclusively to none.'" (emphases added) (quoting *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1373 (Fed. Cir. 2011))); *DietGoal Innovations LLC v. Bravo Media LLC*, No. 13-CV-8391, 2014 WL 3582914, at \*10 (S.D.N.Y. July 8, 2014) ("Meal-planning is surely a 'long prevalent' practice. . .

The patents at issue here simply are not directed to such a manner of "organizing human activity" or a mental process, do not preempt use of the basic "building blocks of human ingenuity," and, thus, do not claim abstract ideas.  *See Alice*, 134 S. Ct. at 2354.  Indeed,

. Although specific approaches to meal-planning have evolved as dietary knowledge has advanced and social mores have changed, *humans* have assuredly engaged at least in rudimentary meal-planning 'for millennia.' . . . [T]he claims of the '516 Patent recite steps that . . . could 'be *performed in the human mind*, or by a *human using a pen and paper*,' and 'a method that can be performed by human thought alone is merely an abstract idea and is not patent-eligible under § 101.'" (emphases added) (citations omitted)); *CMG Fin. Servs., Inc. v. American Airlines, Inc.*, No. 11-cv-10344, slip op. at 27 (C.D. Cal. Aug.  29, 2014) ("These claims merely recite basic, longstanding banking principles."); *Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*, No. 2:13-CV-655, 2014 WL 4364848, at *10 (E.D. Tex. Sept. 3, 2014) ("[T]he basic functions of converting non-negotiable loyalty award credits of one vendor into loyalty award credits of a second vendor according to an agreed-upon conversion rate, and then allowing the consumer to use the converted loyalty award credits to make purchases from the second vendor, are all functions that are readily *within the capacity of a human to perform* without computer aid.  Indeed, the patents themselves confirm that fact, conceding that 'the methods detailed herein can also be methods performed at least in part by a service agent and/or a machine manipulated by a service agent.'" (emphasis added)); *Walker Digital, LLC v. Google, Inc.*, No. 11-CV-318, 2014 WL 4365245, at *5 (D. Del. Sept. 3, 2014) ("[N]one of these limitations adds anything meaningful to the basic concept of controlled exchange of information about people as historically practiced by matchmakers and headhunters—and as disclosed in the patent specification itself.  By contrast, all of these steps could be performed (and have been performed) by *human beings interacting with one another*." (emphasis added)); *Tuxis Techs., LLC v. Amazon.com*, Inc., No. 13-CV-1771, 2014 WL 4382446, at *3 (D. Del. Sept. 3, 2014) ("[The asserted claims] simply deconstruct the abstract concept of cross-selling into a series of constituent and inherent steps according to which a *customer* makes contact with a *merchant* for the purpose of one purchase transaction, and the merchant offers a second purchase transaction. Tuxis agrees upselling is an abstract idea." (emphases added)); *Eclipse IP LLC v. McKinley Equip. Corp.*, No. 14-CV-154, 2014 WL 4407592, at *6 (C.D. Cal. Sept. 4, 2014) ("McKinley correctly points out that all of the recited steps in claim 1 can be performed by a *person talking on the phone*." (emphasis added)); *Every Penny Counts, Inc. v. Wells Fargo Bank, N.A.*, No. 8:11-CV-2826, 2014 WL 4540319, at *4 (M.D. Fla. Sept. 11, 2014) ("[E]conomic actors of every description and every motive . . . have understood and exploited the elemental notion of regularly and frequently capturing a small and inconspicuous quantity and segregating and retaining the captured quantities until the quantities accumulate into a large quantity—a program indebted only and entirely to the fundaments of elemental arithmetic—*simple addition*." (emphasis added)); *Open Text S.A. v. Alfresco Software Ltd*, No. 13-CV-04843, 2014 WL 4684429, at *4 (N.D. Cal. Sept. 19, 2014) ("[The claims] recite a very simple computer-driven method to engage in the commonplace and time-honored practice of *interacting with customers* to promote marketing and sales. . . . This describes the most basic and widely-understood principle of marketing: identify potential or current customers and *engage with them* to improve their customer experience.").

Openet's argument that the claims are directed to an abstract idea fails for each of the asserted patents.

### a) The '065 Patent

Claim 1 of the '065 patent[6] reads:

1. A computer program product embodied on a computer readable storage medium for processing network accounting information comprising:

computer code for receiving from a first source a first network accounting record;

computer code for correlating the first network accounting record with accounting information available from a second source; and

computer code for using the accounting information with which the first network accounting record is correlated to enhance the first network accounting record.

Openet identifies the "abstract idea of the '065 patent" to be "correlating and enhancing network usage data . . . to facilitate billing." Openet Mem. at 7. Even this overly simplistic summary of the claim, however, demonstrates that it is not subject to invalidation under 35 U.S.C. § 101. "Correlating and enhancing network usage data" is not a "fundamental economic practice," *Bilski*, 130 S. Ct. at 3231, or "method of organizing human activity," *Alice*, 134 S. Ct. at 2356. *See also Alice*, 134 S. Ct. at 2355 ("A principle, in the abstract, is a fundamental truth; an original cause; a motive; these cannot be patented, as no one can claim in either of them an exclusive right." (quoting *Le Roy v. Tatham*, 55 U.S. 156, 175 (1852))).

Indeed, far from a "fundamental truth," the invention claimed in the '065 patent is directed to a specific improvement to packet-based network billing technology. *See* Zegura Decl. ¶¶ 37, 46, 51, 60, 67. As this Court explained, in the '065 patent, "[t]he patented system collects . . . raw usage data records from their diffuse locations throughout the network and through appropriate filtering, aggregation, correlation, and enhancement transforms them into a

---

[6] Amdocs also asserts infringement of claims 4, 7, 13, and 17 of the '065 patent. *See* Zegura Decl. ¶¶ 36-70.

format suitable for accounting, called 'detail records' ('DRs')." *Amdocs*, 761 F.3d at 1331-32 (quoting Dkt. No. 259 at 6).

What's more, under this Court's claim construction, the claims are further limited to the performance of that activity "in a distributed fashion" and "close to the source of the network usage information." *See* Dkt. No. 259 at 48-49, 58; *see also Amdocs*, 761 F.3d at 1340. Given that the claimed inventions collect "raw usage data records from their diffuse locations throughout the network" and must enhance those digital records "close to the source" of the network device where they are collected, "[w]e are not dealing with a situation in which there is a method that can be performed without a machine." *SiRF Tech.*, 601 F.3d at 1333; *see also* Zegura Decl. ¶¶ 39-43, 48, 53-57, 62-64, 69.[7]

### b)    The '984 and '510 Patents

Claim 1 of the '984 patent[8] reads:

1. A method for reporting on the collection of network usage information from a plurality of network devices, comprising:

(a) collecting network communications usage information in real-time from a plurality of network devices at a plurality of layers utilizing multiple gatherers each including a

---

[7] *Digitech Image Technologies, LLC v. Electronics for Imaging, Inc.*, 758 F.3d 1344, 1351 (Fed. Cir. 2014), relied on by Openet (Openet Mem. at 7-8), is not to the contrary. Despite Openet's contention that the method claim at issue in *Digitech Image* is "nearly identical" to claim 7 of the '065 patent (Openet Mem. at 7), *Digitech Image* is readily distinguishable. In that case, the court explained that while the method claim recited "a process of combining two data sets into a device profile," it failed to "claim the [image] processor's use of that profile in the capturing, transforming, or rendering of a digital image." *Id.* at 1351. Instead, "[t]he two data sets are generated by taking *existing information* . . . and organizing this information into a new form," and thus recited "an ineligible abstract process of gathering and combining data that *does not require input from a physical device*." *Id.* (emphasis added). Contrary to the claims at issue in *Digitech Image*, each of the asserted claims here is specifically directed towards *digital* network accounting records, and further ties the collected and processed network accounting information to a physical device. *See, e.g.*, '065 patent, cl. 7 ("receiving from a *first source* a first network accounting record"); *see also* Zegura Decl. ¶¶ 39-41, 53-55, 62, 69.

[8] Amdocs also asserts infringement of claims 2, 7, 8, and 13 of the '984 patent. *See* Zegura Decl. ¶¶ 78-108.

plurality of information source modules each interfacing with one of the network devices and capable of communicating using a protocol specific to the network device coupled thereto, the network devices selected from the group consisting of routers, switches, firewalls, authentication servers, web hosts, proxy servers, netflow servers, databases, mail servers, RADIUS servers, and domain name servers, the gatherers being positioned on a segment of the network on which the network devices coupled thereto are positioned for minimizing an impact of the gatherers on the network;

(b) filtering and aggregating the network communications usage information;

(c) completing a plurality of data records from the filtered and aggregated network communications usage information, the plurality of data records corresponding to network usage by a plurality of users;

(d) storing the plurality of data records in a database;

(e) allowing the selection of one of a plurality of reports for reporting purposes;

(f) submitting queries to the database utilizing the selected reports for retrieving information on the collection of the network usage information from the network devices; and

(g) outputting a report based on the queries.

Claim 16 of the '510 patent[9] reads:

16. A computer program product stored in a computer readable medium for reporting on a collection of network usage information from a plurality of network devices, comprising:

> computer code for collecting network communications usage information in real-time from a plurality of network devices at a plurality of layers;

> computer code for filtering and aggregating the network communications usage information;

> computer code for completing a plurality of data records from the filtered and aggregated network communications usage information, the plurality of data records corresponding to network usage by a plurality of users;

> computer code for storing the plurality of data records in a database;

> computer code for submitting queries to the database utilizing predetermined reports for retrieving information on the collection of the network usage information from the network devices; and

> computer code for outputting a report based on the queries;

> wherein resource consumption queries are submitted to the database utilizing the reports for retrieving information on resource consumption in a network; and

> wherein a resource consumption report is outputted based on the resource consumption queries.

---

[9] Amdocs also asserts infringement of claims 17 and 19 of the '510 patent. *See* Zegura Decl. ¶¶ 109-126.

Openet contends that these claims are invalid under section 101 because the asserted claims of the '510 patent allegedly "could be performed with a pen and paper, a file cabinet, and a calculator," and the asserted claims of the '984 patent allegedly "could be performed by a human in real time." Openet Mem. at 11-12, 14. That is manifestly incorrect. A human being cannot collect "usage information in real-time from a plurality of network devices at a plurality of layers," communicate with network devices "using a protocol specific to the network device," "filter[] and aggregat[e]" network usage information, or complete data records "in a distributed fashion." *See* Zegura Decl. ¶¶ 81-89, 99-107, 112-119, 125.

Moreover, Openet's argument once again wholly ignores this Court's claim construction, which also requires that "completion" include enhancement "close to the source" of multiple network information sources located at different locations. *See* Dkt. No. 259 at 48, 52-53, 117-118. Clearly, a human being cannot perform any activity "in a distributed fashion" as the Court's claim construction (affirmed by the Federal Circuit) requires. *Id.* at 49; *see* Zegura Decl. ¶¶ 42-43, 48, 56-57, 63-64, 69, 87-88, 105-106, 117-118. Indeed, while the asserted patents describe "batch processing" as *prior art* (*see* '065 patent, 2:2-10), in the claimed inventions, "network traffic information is *captured at network information sources*" (*id.* at 2:34-35 (emphasis added)), and that data is then processed "close to its source" (*id.* at 3:63).[10] Thus, the elements of the asserted claims "play a significant part in permitting the claimed method to be performed, rather than function[ing] solely as an obvious mechanism for permitting a solution to be achieved more quickly." *SiRF Tech.*, 601 F.3d at 1333; *see* Zegura Decl. ¶¶ 38-44, 47-49, 52-80-90, 98-108, 111-120, 124-126.

---

[10] Indeed, Openet's purported example of "a telephone user's data . . . compiled by a human being" not only fails to account for the claim language of the '510 patent, but also relies on a prior art method and system that was *expressly disparaged* in the asserted patents. *See* '065 patent, 1:61-2:11.

- 18 -

Because (i) the claimed data is collected and processed by a physical device, (ii) the claims cover enhancement of network accounting records in a packet-based network such as the Internet, and (iii) the enhancement must "occur[] close to the source of the network usage information" (Dkt. No. 259 at 48), none of these tasks can be performed by a human, and they instead "place[] a meaningful limit on the scope of the claims."  601 F.3d at 1332-33.

### c)　　The '797 Patent

Finally, claim 1 of the '797 patent[11] (as corrected[12]) reads:

1. A method for generating a single record reflecting multiple services for accounting purposes, comprising:

(a) identifying a plurality of services carried out over a network;

(b) collecting data describing the plurality of services; and

(c) generating a single record including the collected data, wherein the single record represents each of the plurality of services;

> wherein the services include at least two services selected from a group consisting of a hypertext transfer protocol (HTTP) session, an electronic mail session, a multimedia streaming session, a voice over Internet Protocol (IP) session, a data communication session, an instant messaging session, a peer-to-peer network application session, a file transfer protocol (FTP) session, and a telnet session;

> wherein the data is collected utilizing an enhancement procedure defined utilizing a graphic user interface by:

>> listing a plurality of available functions to be applied in real-time prior to end-user reporting,

>> allowing a user to choose at least one of a plurality of fields, and

>> allowing the user to choose at least one of the listed functions to be applied to the chosen field in real-time prior to the end-user reporting.

---

[11] Amdocs also asserts infringement of claims 2, 7, 8, and 19 of the '797 patent.  *See* Zegura Decl. ¶¶ 109-126.

[12] The PTO issued a Certificate of Correction of the '797 patent on June 22, 2010, which corrected independent claims 1 and 19 of the patent.

- 19 -

Openet contends that the '797 patent is directed to the alleged "abstract idea" of "the creation of a single record for accounting purposes from information collected from two of the specified services."  Openet Mem. at 16.  But, once again, even this overly simplified characterization of the claims demonstrates that they are not directed solely to an "abstract concept."  The "creation of a single record for accounting purposes" based on data received from a packet-based network is far from a "fundamental truth."  *See* Zegura Decl. ¶¶ 137, 146, 151, 161, 166.  Instead, as with Amdocs' other patents, the '797 patent claims a specific technological improvement over prior art packet-based network billing records.

> ### 2.    Even Were the Patents Directed to an Abstract Idea, the Additional Elements in the Claims Add "Significantly More" Than Conventional Steps

"[A]n invention is not rendered ineligible for patent simply because it involves an abstract concept."  *Alice*, 134 S. Ct. at 2354.  Rather, "'[a]pplication[s]' of such concepts 'to a new and useful end' . . . remain eligible for patent protection."  *Id.*  Thus, even where a patent claim is directed to an abstract concept (which the asserted patents are not), step two of the *Alice* framework requires courts to "examine the elements of the claim to determine whether it contains an 'inventive concept' sufficient to 'transform' the claimed abstract idea into a patent-eligible application."  *Id.* at 2357.  In *Alice*, the focus under step two is on "whether the claims . . . do more than simply instruct the practitioner to implement the abstract idea … on a generic computer."  *Id.* at 2359.

*Helios Software* is again instructive regarding how to apply *Alice* and *Bilski* to computer software claims that are not directed towards business method patents (as *Alice* and *Bilski* both were).  In *Helios Software,* the claims were "drawn to remotely monitoring data associated with an Internet session and controlling access," and the court held that, "even if the asserted claims

were drawn to abstract ideas, the claims would remain patentable because they satisfy the machine-or-transformation test," reasoning:

> The implementation of the '304 Patent by a computer inserts *meaningful limitations* by claiming exchanging data over different internet sessions to capture the content of an ongoing Internet communication session. Similarly, the '571 Patent claims real-time data capture and transmission and reception, thereby using a computer to 'play a significant part in permitting the claimed method to be performed.' Finally, the '237 Patent involves the ability to provide access configurations and communication protocols that control computer network access and monitor activity. These meaningful limitations limit the scope of the patented invention and *sufficiently tie the claimed method to a machine*. Importantly, both sides concede that *none of these limitations could be performed by a human alone*. Accordingly, the Court finds that the patents-in-suit are not drawn to patent-ineligible subject matter.

2014 WL 4796111, at \*17 (emphases added).

Openet argues that Amdocs's asserted claims do no more than "rearrang[e] data *conventionally collected* from a telecommunications network." *See* Openet Mem. at 2 (emphasis added). But, as in *Helios Software*, there is nothing conventional about the collection or processing of data in the claimed inventions. As this Court explained, the claimed system "is designed to execute specific pieces of [the] processing at specific stages," which "*distinguish[es] the invention from earlier systems.*" Dkt. No. 259 at 35-36 (emphasis added). Like the claims in *Diamond v. Diehr*, 450 U.S. 175 (1981), therefore, the claims here are "patent eligible because they *improve[] an existing technological process*"—namely tracking and billing for network services in a packet-based network through the creation of better network accounting records. *Alice*, 134 S. Ct. at 2358 (emphasis added); *see also* Zegura Decl. ¶¶ 44, 49, 58, 65, 70, 90, 108, 120, 126, 144, 149, 159, 164, 175. Thus, unlike the claims at issue in *Alice* and the other cases cited by Openet, in Amdocs' patents, the "implementation of the [asserted claims] by a computer inserts meaningful limitations" by supplying an innovative manner of collecting, correlating,

- 21 -

enhancing, and reporting on network accounting records in packet-based networks such as the Internet. *See Helios Software*, 2014 WL 4796111, at \*17.

Contrary to Openet's contention that the asserted patents claim using "a generic computer to perform generic computer functions" (Openet Mem. at 2), each of the asserted claims transforms the components of a computer network into something they previously were not: a system capable of tracking network use. Thus, even if the Court were to (incorrectly) determine that the asserted claims are directed to an abstract concept, the additional limitations of the claims supply the necessary "inventive concept" to meet the threshold of section 101. Indeed, at a minimum, there are material issues of disputed fact as to whether the limitations of the claims other than the purported "abstract ideas" identified by Openet are merely conventional uses of a general purpose computer or add significantly more.

### a)      The '065 Patent

As Openet concedes, the asserted claims of the '065 patent are directed to "network accounting information" (Openet Mem. at 9) and, thus, are implemented within the technological environment of computer networks. However, unlike the patents at issue in *Bilski* and *Alice*, the asserted claims of the '065 patent (as well as the '510, '984, and '797 patents) *do*, in fact, "improve the functioning of the computer itself," "effect an improvement in [a particular] technology or technical field," and thus "transform" any alleged "abstract idea into a patent-eligible invention." *Alice*, 134 S. Ct. at 2359-60; *see* Zegura Decl. ¶¶ 38-44, 47-49, 52-58, 61-65, 68-70.

As this Court has recognized (*see* Dkt. No. 259 at 24-25), the claimed inventions are designed to allow network service providers to "generate accurate usage-based billing" by "deriv[ing] IP session and transaction information, collected in real time, from a *multitude of network elements*." '065 patent, 3:30-34 (emphasis added). To this end, the invention "is

designed to execute specific pieces of this processing at specific stages." Dkt. No. 259 at 35. In particular, the processing of network accounting information "occurs close to the source of the network usage information." *Id.* at 48. The claimed system is a ***specific improvement*** over prior art systems, which "processed all of the network usage information at a single, central location," as "collecting and processing data close to its source . . . 'reduc[es] the volume of data sent on the network to the CEM,' thereby 'eliminat[ing] capacity bottlenecks [and] improving the scalability and efficiency of the system.'" Dkt. No. 259 at 36; *see* Zegura Decl. ¶¶ 42-43, 48, 56-57, 63-64, 69. Thus, contrary to Openet's contentions, the asserted claims of the '065 patent do "effect an improvement in [a] technology or technical field." *See* Openet Mem. at 9.

Openet argues that "the asserted claims of the '065 patent require, at most, only conventional computer hardware and software." Openet Mem. at 9. However, there is nothing conventional about collecting and processing network accounting records at their source—indeed this Court held that doing so is a "key component" ***distinguishing*** the claimed invention from conventional systems. Dkt. No. 259 at 38; *see* Zegura Decl. ¶¶ 38-44, 47-49, 52-58, 61-65, 68-70. Moreover, the asserted claims of the '065 patent are not patentable solely "because they make efficient the generation of millions of [network accounting] records" (Openet Mem. at 9); rather the asserted claims are patentable, in part, due to the ***manner in which*** the claims facilitate the generation of network accounting records—*i.e.*, "in a distributed fashion." *See* Dkt. No. 259 at 49; *see also* Zegura Decl. ¶¶ 42-43, 48, 56-57, 63-64, 69. Thus, the claims here are akin to the claim at issue in *Diehr*, which the Supreme Court held was patentable "not because it involved a computer," but because it was "designed to solve a technological problem in 'conventional industry practice.'" *Alice*, 134 S. Ct. at 2358 (quoting 450 U.S. at 177-78). As in *Diehr*, the claims of the asserted patents are "patent eligible because they improve[] an existing

technological process"—accounting and billing for network usage in packet-based networks—and "not because they [are] implemented on a computer." *Id.*

Moreover, contrary to Openet's assertion, the patented invention is not one in which the computer merely enables the process to be performed more efficiently. *See* Openet Mem. at 9. Rather, here, the computer is "integral to the claimed invention, facilitating the process in a way that a person making calculations or computations could not." *Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canada (U.S.)*, 687 F.3d 1266, 1278 (Fed. Cir. 2012) *cert. denied*, 134 S. Ct. 2870 (2014); *see also supra* at 11-15 (explaining that the claimed inventions cannot be performed by a human); Zegura Decl. ¶¶ 39-44, 48-49, 53-58, 62-65, 69-70. The receipt, correlation, and enhancement of network accounting records as claimed in the '065 patent "impose[s] a meaningful limit on the scope of a claim" by "play[ing] a significant part in permitting the claimed method to be performed." *SiRF Tech.*, 601 F.3d at 1333. Thus, the claims of the '065 patent "do more than simply instruct the practitioner to implement the abstract idea . . . on a generic computer." *Alice*, 134 S. Ct. at 2359.

**b)      The '984 and '510 Patents**

As discussed above (*see supra* at 22-24), like the '065 patent, the manner in which network accounting records are collected, correlated, and enhanced also supplies an "inventive concept" to the inventions claimed in the '510 patent and '984 patents. *See* Zegura Decl. ¶¶ 81-89, 99-107, 112-119, 125. Moreover, both the '510 and '984 patents include additional elements which "ensure that the patent in practice amounts to significantly more than a patent upon the [alleged abstract idea] itself." *Alice*, 134 S. Ct. at 2355; *see* Zegura Decl. ¶¶ 81-89, 99-107, 112-119, 125. For example, the asserted claims of the '510 patent require, at a minimum, "collecting network communications usage information in ***real-time from a plurality of network devices*** at a plurality of layers"; "***filtering and aggregating*** the network communications usage information";

- 24 -

and "completing a plurality of data records from the filtered and aggregated network communications usage information." *See, e.g.*, '510 patent, cl. 16 (emphases added); *see also* Zegura Decl. ¶¶ 81-82, 85-88, 99-100, 104-106, 112-119, 124-125. In addition to these limitations, the asserted claims of the '984 patent also require, at a minimum, "a ***plurality of information source modules*** each interfacing with one of the network devices and ***capable of communicating using a protocol specific to the network device***." *See, e.g.*, '984 patent, cl. 1 (emphases added); *see also* Zegura Decl. ¶¶ 82-84, 100-102, 113-114. These limitations add significantly more to any alleged abstract idea. *See, e.g.*, *AutoForm Eng'g GMBH v. Eng'g Tech. Assocs., Inc.*, No. 10-CV-14141, 2014 WL 4385855, at *3 (E.D. Mich. Sept. 5, 2014) ("While the patent may include or rely on some basic concepts in the design of sheet metal forming tools, the patents also include numerous limitations that narrow the scope of the patent."); *see also* Zegura Decl. ¶¶ 81-89, 99-107, 112-119, 125.

While Openet broadly contends that the asserted claims of the '510 and '984 patents are "implemented on a generic computer via conventional computer code," and "add nothing more than generic and conventional computer hardware" (Openet Mem. at 12, 14), Openet makes no attempt to show that these claim limitations—or any of the other numerous limitations—can be "implemented on 'a general-purpose digital computer.'" *Alice*, 134 S. Ct. at 2357. Openet points to the recitation of "network devices," stating that such devices are merely performing their "typical and ordinary function." *See* Openet Mem. at 14. But the "network devices" cited in the asserted claims are ***not*** performing their "typical and ordinary function[s]" at all. *See* Zegura Decl. ¶¶ 81-89, 99-107, 112-119, 125. Rather, unlike in the past, they are being used to collect and process network accounting information in "real time" and "close to the source" of that network accounting information. *See* Zegura Decl. ¶¶ 81-89, 99-107, 112-119, 125.

- 25 -

Openet's isolated focus on "network devices" does nothing to demonstrate that the asserted claims are patent ineligible, as the Supreme Court has warned that courts should "consider the invention as a whole, rather than 'dissect[ing] the claims into old and new elements and then . . . ignor[ing] the presence of the old elements in the analysis.'" *Bilski*, 130 S. Ct. at 3230.

Thus, the asserted claims of the '510 and '984 patents recite specific devices that perform particular specialized functions—which cannot be performed by a human—in order to collect and report network usage information.[13]  *See* Zegura Decl. ¶¶ 79-90, 97-108, 110-120, 123-126. "These meaningful limitations limit the scope of the patented invention and sufficiently tie the claimed method to a machine."  *Helios Software*, 2014 WL 4796111, at *17.

c)      The '797 Patent

Finally, citing *DietGoal Innovations LLC v. Bravo Media LLC*, No. 13-CV-8391, 2014 WL 3582914 (S.D.N.Y. July 8, 2014), and *Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*, No. 2:13-CV-655, 2014 WL 4364848 (E.D. Tex. Sept. 3, 2014), Openet also asserts that "the

---

[13] The claims at issue here amount to much more than "a mere instruction to 'implemen[t]' an abstract idea 'on . . . a computer.'"  *Alice*, 134 S. Ct. at 2358.  Unlike the claims in *Bilski* and *Alice*, the claims of the '510 and '984 patents do more than recite generic computer functions in functional terms.  *See Alice*, 134 S. Ct. at 2352 n.2 (reciting the claims as including the steps of "creating a shadow credit record," "obtaining . . . a start-of-day balance," "adjusting each respective party's shadow credit record," and "instructing on[e] of the exchange institutions"); *Bilski*, 130 S. Ct. at 3223-24 (reciting the claims as including the basic steps of "initiating a series of transactions," "identifying market participants," and "initiating a series of transactions"); *see also buySAFE*, 2014 WL 4337771, at *5 ("The computer functionality is generic—indeed, quite limited: a computer receives a request for a guarantee and transmits an offer of guarantee in return.  There is no further detail.  That a computer receives and sends the information over a network—with no further specification—is not even arguably inventive."); *Planet Bingo*, 2014 WL 4195188, at *3 ("[T]he claims recite a program that is used for the generic functions of storing, retrieving, and verifying a chosen set of bingo numbers against a winning set of bingo numbers.").  *Cf. Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*, No. 2:13-CV-655, 2014 WL 4364848, at *13 (E.D. Tex. Sept. 3, 2014) ("[Business method] patents . . . simply describe a problem, announce purely functional steps that purport to solve the problem, and recite standard computer operations to perform some of those steps. . . . [B]ecause they describe the claimed methods in functional terms, they preempt any subsequent specific solutions to the problem at issue.").

- 26 -

'797 patent is limited to the basic functions of a generic computer, including storing and displaying information, performing arithmetic calculations, and enabling a user to use a GUI in conventional fashion." Openet Mem. at 17. However, Openet ignores that, unlike the patents at issue in *DietGoal* and *Loyalty Conversion*, the '797 patent expressly defines *how* data is collected. *See* '797 patent, cl. 1 ("wherein the data is collected utilizing an enhancement procedure defined utilizing a graphical user interface"); *see also* Zegura Decl. ¶¶ 140-144, 148, 153-157, 163, 168-173. As discussed above (*see supra* at 21-24), there is nothing conventional about the way the claimed inventions collect and process data. *See* Zegura Decl. ¶¶ 138-144, 147-149, 152-159, 162-164, 167-175. Thus, the asserted claims of the '797 patent "contain[] an 'inventive concept' sufficient to 'transform' the claimed abstract idea into a patent-eligible application." *Alice*, 134 S. Ct. at 2357.

## IV. CONCLUSION

For the foregoing reasons, Openet's Motion for Judgment on the Pleadings That Amdocs' Asserted Patent Claims Are Invalid Under 35 U.S.C § 101 should be denied.

Dated: October 10, 2014                    Respectfully submitted,

/s/
James L. Quarles III (Va. Bar No. 44993)
Gregory H. Lantier (Va. Bar No. 65657)
Brittany Blueitt Amadi (Va. Bar No. 80078)
WILMER CUTLER PICKERING HALE AND
    DORR LLP
1875 Pennsylvania Avenue NW
Washington, DC 20006
Phone: (202) 663-6000
Fax: (202) 663-6363
james.quarles@wilmerhale.com
gregory.lantier@wilmerhale.com
brittany.amadi@wilmerhale.com

S. Calvin Walden, *pro hac vice*
Violetta G. Watson, *pro hac vice*
Corinne E. Atton, *pro hac vice*
WILMER CUTLER PICKERING HALE AND
    DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Phone: (212) 230-8800
Fax: (212) 230-8888
calvin.walden@wilmerhale.com
violetta.watson@wilmerhale.com
corinne.atton@wilmerhale.com

*Attorneys for Plaintiff Amdocs (Israel) Limited*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify on the 10th day of October, 2014, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Brian H. Pandya, Esq.
Wiley Rein LLP
1776 K Street NW
Washington, DC 20006
bpandya@wileyrein.com

*Attorney for Defendants Openet Telecom, Inc.*
*and Openet Telecom, Ltd.*

/s/

Gregory H. Lantier (Va. Bar. No. 65657)
WILMER CUTLER PICKERING
HALE AND DORR LLP
1875 Pennsylvania Avenue, N.W.
Washington, DC 20006
Phone:  (202) 663-6000
Fax:  (202) 663-6363
gregory.lantier@wilmerhale.com

*Attorney for Plaintiff Amdocs (Israel) Limited*
