# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA
### ALEXANDRIA DIVISION

| | |
|---|---|
| AMDOCS (ISRAEL) LIMITED, an Israeli Corporation, | Case No. 1:10-cv-910 (LMB/TRJ) |
| Plaintiff, | |
| v. | |
| OPENET TELECOM, INC., a Delaware Corporation, and OPENET TELECOM LTD., An Irish Corporation, | **JURY TRIAL DEMANDED** |
| Defendants. | |

## OPENETS' REPLY IN SUPPORT OF THEIR MOTION FOR JUDGMENT ON THE PLEADINGS THAT AMDOCS' ASSERTED PATENT CLAIMS ARE INVALID UNDER 35 U.S.C. § 101

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ..................................................................................................1

II.     THE ASSERTED PATENT CLAIMS ARE INVALID UNDER § 101.............................3

        A.      The Asserted Claims Are Indistinguishable From The Numerous Post-*Alice* Cases Invalidating Data Processing Patents......................................................................3

                1.      The Patents Claim Methods of Organizing Human Activity......................3

                2.      Field of Use Limitations Cannot Save the Claims....................................5

        B.      The '065 Patent Is Invalid...............................................................................8

        C.      The '510 and '984 Patents Are Invalid .............................................................9

        D.      The '797 Patent Is Invalid.............................................................................10

        E.      The Court Should Disregard Dr. Zegura's Declaration .......................................10

III.    OPENET'S MOTION IS PROCEDURALLY PROPER.................................................11

IV.     CONCLUSION..................................................................................................13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Accenture Global Servs., GmbH v. Guidewire Software, Inc.*,
728 F.3d 1336 (Fed. Cir. 2013)............................................................................11

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l.*,
134 S. Ct. 2347 (2014).................................................................................. *passim*

*American Canoe Association, Inc. v. Murphy Farms, Inc.*,
326 F.3d 505 (4th Cir. 2003) ..............................................................................12

*In re Bilski*,
545 F.3d 943 (Fed. Cir. 2008)..............................................................................11

*Bilski v. Kappos*,
561 U.S. 593 (2010).........................................................................................4, 13

*CMG Financial Services, Inc. v. Pacific Trust Bank, F.S.B.*,
No. 11-cv-10344, 2014 WL 4922349 (C.D. Cal. Aug. 29, 2014) .......................4, 6

*Comcast IP Holdings I, LLC v. Sprint Communications Co. L.P.*,
No. 12-cv-205, 2014 WL 3542055 (D. Del. July 16, 2014).........................1, 2, 4, 6

*Data Distribution Techs., LLC v. BRER Affiliates, Inc.*,
No. 12–4878, 2014 WL 4162765 (D.N.J. Aug. 19, 2014)...............................2, 10

*DietGoal Innovations LLC v. Bravo Media LLC*,
No. 13-CV-8391, 2014 WL 3582914 (S.D.N.Y. July 8, 2014) ..............................4

*Digitech Image Technologies, LLC v. Electronics For Imaging, Inc.*,
758 F.3d 1344 (Fed. Cir. 2014)..................................................................... *passim*

*Digitech Information Systems, Inc. v. BMW Financial Services NA, LLC*,
864 F. Supp. 2d 1289 (M.D. Fla. Mar. 30, 2012) ...............................................11

*Eclipse IP LLC v. McKinley Equipment Corp.*,
No. 14-CV-742, 2014 WL 4407592 (C.D. Cal. Sept. 4, 2014) ....................5, 9, 13

*Every Penny Counts, Inc. v. Wells Fargo Bank, N.A.*,
No. 8:11-CV-2826, 2014 WL 4540319 (M.D. Fla. Sept. 11, 2014)......................5

*Harper v. Virginia Dep't of Taxation*,
509 U.S. 86 (1993)..............................................................................................13

*Helios Software, LLC v. SpectorSoft Corp.*,
   No. 12-cv-801, 2014 WL 4796111 (D. Del. Sept. 18, 2014)..................................................4, 7

*I/P Engine, Inc. v. AOL, Inc.*,
   No. 2013-1307, 2014 WL 3973501 (Fed. Cir. Aug. 15, 2014) ............................................6, 9

*Loyalty Conversion Systems Corp. v. American Airlines, Inc.*,
   No. 2:13-CV-655, 2014 WL 4364848 (E.D. Tex. Sept. 3, 2014)......................................4, 7, 9

*Open Text S.A. v. Alfresco Software Ltd*,
   No. 13-CV-04843, 2014 WL 4684429 (N.D. Cal. Sept. 19, 2014) ..........................................5

*Saint Annes Develop. Co., Inc. v. Trabich*,
   443 Fed. Appx. 829 (4th Cir. 2011)......................................................................................12

*United States v. Sinclair*,
   74 F.3d 753 (7th Cir. 1996) ..................................................................................................11

*Walker Digital, LLC v. Google, Inc.*,
   No. 11-CV-318, 2014 WL 4365245 (D. Del. Sept. 3, 2014).............................................5, 10

**Statutes**

35 U.S.C. § 101................................................................................................................... *passim*

**Other Authorities**

Fed. R. Civ. P. 54(b) ...............................................................................................................12

## I.  **INTRODUCTION**

Amdocs' opposition brief makes the same arguments that were already rejected by the District of Delaware in *Comcast IP Holdings I, LLC v. Sprint Communications Co. L.P.*[1] and by the Federal Circuit in *Digitech Image Technologies, LLC v. Electronics For Imaging, Inc.*[2] Those arguments could not save the patent claims in those cases and similarly fail here:

- Amdocs argues for patent eligibility because its "claims [allegedly] set forth specific improvements to network accounting technology."  Opp'n at 2 (Dkt. No. 297).

- In *Comcast*, the court rejected a nearly identical argument that the claims at issue "are narrowly directed to overcoming a specific problem of telephony networks by using telephony parameters to optimize bandwidth allocation on such networks."[3]

- In *Digitech*, the court likewise rejected the argument that the claims at issue were "patent eligible because they describe a process for generating a device profile that is specifically tied to a digital image processing system and is integral to the transformation of a digital image."[4]

Those arguments failed in those two cases and the dozens of other cases cited by Openet in its opening brief because claims directed to merging and manipulating data cover patent-ineligible abstract ideas.  Those cases demonstrate that patents with far more complex claims than asserted in the Amdocs patents have been invalidated post-*Alice*.  It is no longer sufficient to require the use of computers, limit claims to fields of uses (*e.g.*, telephony networks in *Comcast* or digital image processing in *Digitech*), or limit claims to specific architectures (*e.g.*, the distributed architecture here).  Mere "drafting effort[s] designed to monopolize the abstract

---

[1]    No. 12-cv-205, 2014 WL 3542055 (D. Del. July 16, 2014).
[2]    758 F.3d 1344 (Fed. Cir. 2014).
[3]    2014 WL 3542055, at *3.
[4]    758 F.3d at 1350.

1

idea" no longer impart patentability. *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2357 (2014).

Amdocs' opposition largely focuses on the purported value and novelty of the claimed inventions but ignores the actual language of the patent claims. The purported value cited by Amdocs derives from what the patent specifications themselves admit are generic hardware and software used to perform data collection and processing. A patent "may remedy inefficiencies, but that fact does not establish subject matter eligibility." *Data Distrib. Techs., LLC v. BRER Affiliates, Inc.*, No. 12–4878 (JBS/KMW), 2014 WL 4162765, at *14 (D.N.J. Aug. 19, 2014).

Amdocs wants the Court to focus on generalities and ignore what is actually claimed in the patents. When the patents are reviewed claim-by-claim, element-by-element, there is no question that they claim the abstract idea of merging and manipulating data records. For example, the actual asserted claims of the '065 patent never reference packet-based networks, the Internet, or specific network devices but broadly claim "correlating [a] first network accounting record with accounting information available from a second source" and "using the accounting information with which the first network accounting record is correlated to enhance the first network accounting record." Dkt. No. 294, Ex. 1 at Col. 16:9-14. Therefore, the patent "claims an abstract idea because it describes a process of organizing information through mathematical correlations." *Digitech*, 758 F.3d at 1350.

Just like Comcast's attempt to limit its patent claims to "a specific problem of telephony networks," Amdocs' post-hoc attempt to limit its claims to certain networks (packet-based networks) and certain architectures (distributed architectures) fails; "the prohibition against patenting abstract ideas cannot be circumvented by attempting to limit the use of the formula to a particular technological environment." *Comcast*, 2014 WL 3542055, at *2 (citing *Bilski v.*

2

*Kappos*, 561 U.S. 593 (2010)).  Amdocs' asserted patent claims should be held invalid as unpatentable under 35 U.S.C. § 101.

## II.     THE ASSERTED PATENT CLAIMS ARE INVALID UNDER § 101

### A.     The Asserted Claims Are Indistinguishable From The Numerous Post-*Alice* Cases Invalidating Data Processing Patents

Amdocs can run from but cannot avoid the dozens of cases post-*Alice* invalidating similar patent claims by alleging those cases were limited to "computerized business method claims." Opp'n at 11.  *Bilski* dealt with computerized business methods but left open the possibility that other data processes performed on a computer were still patentable.  *Alice* closed that door; like *Alice*, claims drawn to data manipulation by generic hardware or software are not eligible for patenting.

### 1.     The Patents Claim Methods of Organizing Human Activity

Even under Amdocs' unduly narrow reading of post-*Alice* § 101 case law, the Amdocs patents are directed to "arrangements involving contractual relations, *i.e.*, methods of organizing human activity."  Opp'n at 13.  Each Amdocs patent is directed to tracking data to generate bills, something that has been done for as long as phone companies have existed.  The '065 patent claims "processing network *accounting* information."  Col. 16:5-6.  The '797 patent claims "generating a single record reflecting multiple services for *accounting* purposes."  Col. 2:35-36. The '065, '984, and '510 patent specifications each admit that in "[o]ne embodiment of the system . . . providers can generate accurate usage-based billing" using the claimed inventions. '065 Patent, Col. 3:26-32; '984 Patent, Col. 2:65-3:4; '510 Patent, Col. 3:29-36.  Thus, far from being directed towards "specific improvements to a particular technology" (Opp'n at 11), the Amdocs patents are directed towards recordkeeping and commerce and therefore cover abstract ideas.

3

The asserted claims are also distinguishable from those in *Helios Software, LLC v. SpectorSoft Corp.*, No. 12-cv-801, 2014 WL 4796111 (D. Del. Sept. 18, 2014). The Helios patent claims "relate[s] to controlling computer network access" using an assortment of hardware and software, and regardless, defendants made "no effort to show that [those] ideas are fundamental truths or fundamental principles." *Id*. at \*16-\*17. In contrast, the Amdocs patents claim collecting and organizing network accounting records for billing purposes. For example, the '065 patent merely claims shuffling two pieces of data, *i.e.*, "correlating [a] first network accounting record with accounting information available from a second source" and "using the accounting information with which the first network accounting record is correlated to enhance the first network accounting record." Col. 16:9-14. The '797 patent claims packaging data into "a single record." Col. 2:35. The asserted patent claims are therefore no different from all the other cases that have invalidated data processing patents even where computers were involved and integral to the claimed processes.[5]

---

[5]    *E.g.*, *Comcast IP Holdings I, LLC v. Sprint Commc'ns Co. L.P.*, No. 12-CV-205, 2014 WL 3542055, at \*4 (D. Del. July 16, 2014) ("***processing information*** through a clearinghouse"); *DietGoal Innovations LLC v. Bravo Media LLC*, No. 13-CV-8391, 2014 WL 3582914, at \*13-14 (S.D.N.Y. July 8, 2014) ("creating customized lists by ***retrieving information*** from a stored database" and "***manipulating data*** based on inputs from the user, ***making computations*** from stored data, and ***displaying the results on a visual display***" were "far more routine and conventional than the computerized applications of the economic concepts invalidated in *Bilski* and *Alice*"); *CMG Fin. Servs., Inc. v. Pac. Trust Bank, F.S.B.*, No. 11-cv-10344, 2014 WL 4922349, at \*12 (C.D. Cal. Aug. 29, 2014) ("[P]rogramming instructions are not a meaningful limitation."); *Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*, No. 2:13-CV-655, 2014 WL 4364848, at \*10 (E.D. Tex. Sept. 3, 2014) ("[A]ll of [the claimed] functions consist of simple forms of ***data recording, storage, and calculation***, all of which are conventional functions that can be performed by a generic computer without any novel programming or improvement in the

### 2.    Field of Use Limitations Cannot Save the Claims

Amdocs also argues that its patents are distinguishable from those patents found invalid post-*Alice* because "the claims in those cases were directed to computerized 'business methods' rather than to tangible technological improvements to existing technology like the inventions in Amdocs' patents."  Opp'n at 12.  But every issued patent purports to represent an improvement over existing technology.  In *Digitech*, the invalidated patent "disclose[d] an 'improved device profile' that 'includes both chromatic characteristic information and spatial characteristic information.'"  758 F.3d at 1348.  Similar to the Amdocs patents, that patent disparaged prior art and thus purported to claim a new paradigm for processing data:

---

operation of the computer itself."); *Walker Digital, LLC v. Google, Inc.*, No. 11-CV-318, 2014 WL 4365245, at *7 (D. Del. Sept. 3, 2014) (invalidating a patent claiming a method utilizing generic language of "***receiving*** first party ***information data***" and "***storing*** said first party information data ***in a secure database***," and later "***processing***" requests and "***determining***" if the request had been satisfied); *Tuxis Techs., LLC v. Amazon.com*, Inc., No. 13-CV-1771, 2014 WL 4382446, at *5 (D. Del. Sept. 3, 2014) ("Claim 1 requires nothing more than suggesting an additional good or service, ***in real time over an electronic communications device***, ***based on certain information obtained*** about the customer and the initial purchase."); *Eclipse IP LLC v. McKinley Equip. Corp.*, No. 14-CV-742, 2014 WL 4407592, at *6 (C.D. Cal. Sept. 4, 2014) (invalidating a patent claiming "[a] ***method for communications in connection with a computer-based notification system***"); *Every Penny Counts, Inc. v. Wells Fargo Bank, N.A.*, No. 8:11-CV-2826, 2014 WL 4540319, at *5 (M.D. Fla. Sept. 11, 2014) (invalidating a method of "(1) ***electronically receiving data***, including the transaction amounts, (2) ***modifying*** the transaction amounts in accord with a formula, (3) ***depositing*** the differences between the modified and unmodified transaction amounts into one or more recipient accounts, and (4) ***adjusting*** each account balance accordingly."); *Open Text S.A. v. Alfresco Software Ltd*, No. 13-CV-04843, 2014 WL 4684429, at *2 (N.D. Cal. Sept. 19, 2014) (invalidating a patent reciting "[a]n ***electronic dialog system***" with "a tangible computer readable medium storing instructions" to "obtain" and "execute" instructions) (emphases added).

5

> According to the patent, all imaging devices impose some level of distortion on an image's color and spatial properties. . . . Prior art methods attempted to correct these distortions using certain device dependent solutions and device independent paradigms.
>
> . . .
>
> Device independent solutions discussed in the patent were limited to color information and require creating "device profiles" that describe the color properties of both the source and output devices, thereby enabling a more accurate translation of the image's pixel data into the independent color space and across the source and output devices. The '415 patent expands this device independent paradigm to capture both spatial properties and color properties of an imaging device.

*Id.* at 1347-48. Yet the new data processing paradigm did not save those claims.

The patentee in *Comcast* similarly asserted that its patent was "narrowly directed to overcoming a specific problem of telephony networks by using telephony parameters to optimize bandwidth allocation on such networks." 2014 WL 3542055, at *3. Yet it made no difference that the claimed abstract idea was narrowly directed to overcoming a specific problem. It made no difference that "the claim [was] drawn to a telephony network optimization method, and as such would likely be performed by a telephony network." *Id.* Rather the *Comcast* court agreed with defendants that "even if the claim were limited to optimizing a telephony network via a computer, it would still be invalid because the prohibition against patenting abstract ideas cannot be circumvented by attempting to limit the use of the formula to a particular technological environment." *Id.* at *4 (quoting *Bilski*, 130 S. Ct. at 3230).

Other courts have rejected similar arguments that requiring a computer to perform the claimed invention imparts patent eligibility when, as is the case here, the computer is simply harvesting and processing data in the claimed technological environment. *E.g.*, *CMG Fin. Servs.*, 2014 WL 4922349, at *11 ("[T]he collection and organization of credit card numbers and Internet addresses did not require the method to be performed by a particular machine, or even a machine at all."); *I/P Engine, Inc. v. AOL, Inc.*, No. 2013-1307, 2014 WL 3973501, at *11 (Fed.

6

Cir. Aug. 15, 2014) ("[The] claimed system is merely an Internet iteration of the basic concept of combining content and collaborative data.").

Amdocs further asserts that "there is nothing conventional about the collection or processing of data" in its patents, stating that the claims improve a technological process by "supplying an innovative manner of collecting, correlating, enhancing, and reporting on network accounting records in packet-based networks such as the Internet." Opp'n at 21-22. However, "close examination of the asserted claims shows that they are largely functional in nature and do little more than set forth the general concept [of collecting and manipulating network usage information] . . . and then announce the use of [] computers to obtain various efficiencies . . . ." *Loyalty*, 2014 WL 4364848, at *7. No special computers are required to perform the claimed invention. Instead, "[t]he network devices represent any devices that could be included a network." '065 Patent, Col. 5:10-11. The claimed invention operates using off-the-shelf software "such as the Microsoft Windows NT or Windows Operating System (OS), the IBM OS/2 operating system, the MAC OS, or UNIX operating system." '797 Patent, Col. 3:43-45. The Amdocs patents thus cannot be saved by reference to packet-based networks or distributed architectures.

Lastly, unlike in *Helios*, where the parties conceded that "none of [the claimed] limitations could be performed by a human alone," 2014 WL 4796111, at *17, here, Openet makes no such concession. In fact, as set forth in both Openet's opening brief and the attached Appendix A, any reference to a computer in the claim language represents insignificant post-solution activity, is incidental to the field of use to which the claims are directed, and is therefore irrelevant to patentability.

7

### B.      The '065 Patent Is Invalid

Amdocs asserts that "the invention claimed in the '065 patent is directed to a specific improvement to packet-based network billing technology."  Opp'n at 15.  Nothing in the patent claims limits the patent to packet-based networks.  For that reason alone, Amdocs' arguments (and the supporting declaration of Amdocs' expert Dr. Ellen Zegura, which as explained below is legally irrelevant to the § 101 analysis) can be disregarded.  Yet even if the claims are limited to a specific technical field as Amdocs now wants them to be, they are still invalid.

Amdocs argues the '065 patent is not abstract because it "is specifically directed towards *digital* network accounting records, and further ties the collected . . . information to a physical device."  Opp'n at 16 n.7 (emphasis in original).   However, the invalid patent in *Digitech* also involved transforming digital data and purported to be tied to a device, yet that was not enough to save its patentability.  There, the patent claimed a "digital image reproduction system to capture, transform or render an image" through "a device dependent transformation of spatial information content."  758 F.3d at 1349.  The patent was nonetheless held invalid as "claim[ing] an abstract idea because it describes a process of organizing information through mathematical correlations and is not tied to a specific structure or machine."  *Id.* at 1350; *see also Alice*, 134 S. Ct. at 2359 (invalidating methods claiming "the use of a computer to create electronic records, track multiple transactions, and issue simultaneous instructions").

Here, the actual claims of the '065 patent recite no specific hardware or software.  It accordingly makes no difference whether the claims only cover processing data generated on certain types of networks or whether "there is nothing conventional about collecting and processing network accounting records at their source" (Opp'n at 23), because such limitations are field of use limitations that do not impact patentability or narrow the claimed abstract idea.

### C.     The '510 and '984 Patents Are Invalid

Amdocs contends that the '510 and '984 patents cannot be performed by humans because "[a] human being cannot collect 'usage information in real-time from a plurality of networks devices at a plurality of layers,' communicate with network devices 'using a protocol specific to the network device,' 'filter[] and aggregate[e]' network usage information, or complete data records 'in a distributed fashion.'" Opp'n at 18. However, numerous courts have held that those functions can be accomplished by any generic computer. *See, e.g.*, *Alice*, 134 S. Ct at 2352 (invalidating a patented method that "updates the shadow records in ***real time*** as transactions are entered"); *I/P Engine*, 2014 WL 3973501, at *11 ("[A] system which ***filters information*** for relevance to a user's query using ***combined content and collaborative data*** [] does not pass muster under section 101."); *Loyalty*, 2014 WL 4364848, at *10 (invalidating claims that "require[] that a ***plurality of computers*** communicating with each other perform [the claimed] functions"); *see also* '984 Patent, Col. 1:64-67 ("Typically, the phone company ***captures*** all of the ***data*** and uses batch processing to ***aggregate the information*** into specific user accounts.") (emphases added).

Indeed, similar patents claiming a patented method "wherein the steps are performed with a single computer system, ***a plurality of computers*** that are communicatively coupled, or a ***computer system having a distributed architecture***" have been invalidated under § 101 because the claim "merely makes clear that a computer implementation is required." *Eclipse IP LLC v. McKinley Equip. Corp.*, No. SACV 14–742–GW(AJWx), 2014 WL 4407592, at *10 (C.D. Cal. Sept. 4, 2014). Therefore, Amdocs' argument that "a human being cannot perform any activity in a distributed fashion" (Opp'n at 18) only affirms the claims' dependence on generic computers. *See Alice*, 34 S.Ct. 2358 ("Wholly generic computer implementation is not generally

9

the sort of 'additional feature that provides any practical assurance that the process is more than a drafting effort designed to monopolize the abstract idea itself.'").

Amdocs also cannot point to any actual functions that the patented method itself could transform the abstract idea into patent eligible subject matter. That information may be collected and processed in "real time" and "close to the source," Opp'n at 25, is merely a means to describe the addition of a computer "function[ing] solely as an obvious mechanism for permitting a solution to be achieved more quickly." *Walker Digital*, 2014 WL 4365245, at *3 (quoting *SiRF Tech., Inc. v. Int'l Trade Comm'n*, 601 F.3d 1319, 1333 (Fed. Cir. 2010)); *see also Data Distrib.*, 2014 WL 4162765, at *11 (D.N.J. Aug. 19, 2014) ("[An] invention [that] 'addresses the need for *immediate access* to database records and the need to notify users of changes to database records . . . is undeniably abstract.") (emphasis added). The '984 and '510 patent claims are therefore invalid.

## D.      The '797 Patent Is Invalid

Amdocs gives only passing reference to the '797 patent in its opposition brief. That is presumably because the "creation of a single record for accounting purposes," claimed by the '797 patent, Opp'n at 20, "amounts to electronic recordkeeping—one of the most basic functions of a computer." *Alice*, 34 S.Ct. 2359 (quoting *Mayo*, 132 S.Ct. at 1297). As with the other patents, nothing in the claims ties the invention to a specific device, and insofar as a computer is required, for the reasons set forth above, that is a general purpose computer and incidental only to the claimed field of use. The '797 patent is therefore also invalid.

## E.      The Court Should Disregard Dr. Zegura's Declaration

In support of its opposition brief, Amdocs attached a declaration from its technical expert, Dr. Ellen Zegura. The Court should disregard that declaration for two independent reasons.

10

First, Dr. Zegura's declaration is used to back legally irrelevant assertions, such as Amdocs' arguments that "the '065 patent is directed to a specific improvement to packet-based network billing technology" (Opp'n at 15) and that "there is nothing conventional about collecting and processing network accounting records at their source" (Opp'n at 23). Even if such assertions were supported by the claim language and specification, they make no difference to patentability. As explained above, a field of use limitation does not impart patentability.

Second, Dr. Zegura's declaration is entirely irrelevant to the purely legal issue before the Court. It is well established that experts are prohibited from "offering opinions about legal issues that will determine the outcome of a case." *United States v. Sinclair*, 74 F.3d 753, 758 (7th Cir. 1996). The question of whether a claim is drawn to patent-eligible subject matter presents an issue of law. *See In re Bilski*, 545 F.3d 943, 951 (Fed. Cir. 2008); *Accenture Global Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1340-41 (Fed. Cir. 2013). Therefore, Dr. Zegura's testimony is irrelevant to the Court's § 101 determination and could not possibly "help the trier of fact" as no factual questions exist. *See also Digitech Info. Sys., Inc. v. BMW Fin. Servs. NA, LLC*, 864 F. Supp. 2d 1289, 1293 (M.D. Fla. Mar. 30, 2012) (rejecting Plaintiff's argument that expert reports are needed to determine whether the patent-at-issue contains patent-eligible subject matter, because "[i]ssues of patent-eligible subject matter are questions of law") (*quoting CyberSource Corp. v. Retail Decisions, Inc*., 654 F.3d 1366, 1369 (Fed. Cir. 2011)).

## III.     **<u>OPENET'S MOTION IS PROCEDURALLY PROPER</u>**

Because Amdocs cannot prevail on the merits, they point the Court to procedural objections in attempt to defeat Openet's motion. Specifically, Amdocs' assertion that Openet previously offered "identical arguments" that were rejected by this Court is both factually and legally inaccurate. Opp'n at 7.

11

First, there is no "law of the case" precluding Openet from filing this motion, and Amdocs' argument that there was a "previous holding" or a "prior legal conclusion" is incorrect. *Id*. at 7-9. This Court never held that Amdocs' claims were drawn to patentable subject matter, but instead denied summary judgment of invalidity after granting summary judgment of non-infringement. *See* Dkt. No. 259, at 1-2 ("[T]he Court has determined that upon further reflection that in light of its ruling that the defendants' accused products do not infringe those patents, it would be an unnecessary use of limited judicial resources to proceed with the validity issues. Accordingly, the part of the Order issued on September 27, 2012, that gave defendants the option to pursue their invalidity claims will be vacated and the invalidity claims will be dismissed without prejudice.").

Regardless, a denial of summary judgment is an interlocutory ruling. Any interlocutory ruling "that adjudicates fewer than all the claims" and "does not end the action as to any of the claims or parties and *may be revised at any time*." Fed. R. Civ. P. 54(b) (emphasis added); *see also Am. Canoe Ass'n, Inc. v. Murphy Farms, Inc*., 326 F.3d 505, 514-15 (4th Cir. 2003) ("[The Court] retains the power to reconsider and modify its interlocutory judgments."); *Saint Annes Develop. Co., Inc. v. Trabich*, 443 Fed. Appx. 829, 832 (4th Cir. 2011) ("[T]he district court's summary judgment order, which did not resolve all claims against all parties, was interlocutory and thus subject to revision at any time."). Therefore, Amdocs' claim that Openet may only offer this motion due to "a contrary decision of law" is inaccurate. *See* Opp'n at 8-9.

Second, Amdocs' claim that Openet's motion contains "identical arguments that it previously made" in Openet's summary judgment motion is a flawed attempt to evade a patent validity determination under *Alice*. If anything, as pointed out by Amdocs' opposition to Openet's motion for summary judgment, "Openet's primary authority . . . was decided before the

12

Supreme Court's *Bilski* opinion issued," let alone before this Court had the benefit of *Alic*e.  Dkt. No. 111, at 14 n.6.  Although Openet "cited the district court decision in *Alice*" in its motion for summary judgment (Opp'n at 9), the Supreme Court did not merely affirm the district court's decision.  Rather, the Federal Circuit reversed the district court decision, 685 F.3d 1341 (Fed. Cir. 2012), then issued a highly fractured *en banc* decision, 717 F.3d 1269 (Fed. Cir. 2013), leading the Supreme Court to grant certiorari to settle the evolving law.  134 S.Ct. 734 (2013).  Most notably, "*Alice* [] categorically establish[ed] a clear rule that had been previously subject to debate: 'mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention.'" *Eclipse IP*, 2014 WL 4407592, at *3 (quoting *Alice*, 134 S.Ct. at 2358).

In the face of this new and unanimous Supreme Court decision that extended the law well beyond where it was in 2011, Openet is now appropriately reasserting that Amdocs' patents are invalid under § 101.  This Court should apply the most recent case law.  *Harper v. Virginia Dep't of Taxation*, 509 U.S. 86, 97 (1993) ("When this Court applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate our announcement of the rule.").

## IV.    CONCLUSION

For the foregoing reasons, Openet respectfully request that this Court grant its motion for judgment on the pleadings.

13

Dated: October 14, 2014                    Respectfully submitted,


                                           */s/ Brian H. Pandya*
                                           James H. Wallace, Jr. (admitted *pro hac vice*)
                                           Brian H. Pandya (VSB No. 72233)
                                           WILEY REIN LLP
                                           1776 K Street NW
                                           Washington, D.C. 20006
                                           Telephone: (202) 719-7000
                                           Facsimile: (202) 719-7049

                                           *Counsel for Defendants Openet Telecom, Inc.*
                                           *and Openet Telecom Ltd.*

**Appendix A to Openet's Reply Brief**

| Limitations of '065 Patent Claim 1 | Human/Generic Computer Steps |
|---|---|
| "receiving from a first source a first network accounting record" | Receiving from one file cabinet, or network usage log, one record of network usage. |
| "correlating the first network accounting record with accounting information available from a second source" | Reviewing the first record to determine that the same customer also used network resources a second time; correlating the two records. |
| "using the accounting information with which the first network accounting record is correlated to enhance the first network accounting record" | Taking the data from the second record, and sitting close to the second file cabinet or second network log, writing that information in the first record. |

| Limitations of '984 Patent Claim 1 | Human/Generic Computer Steps |
|---|---|
| "collecting network communications usage information in real-time" | Going to a file cabinet or computer log and recording, by hand, network usage.<br><br>A generic computer could expedite this process so it is done in "real time." |
| "from a plurality of network devices at a plurality of layers utilizing multiple gatherers each including a plurality of information source modules each interfacing with one of the network devices and capable of communicating using a protocol specific to the network device coupled thereto, the network devices selected from the group consisting of routers, switches, firewalls, authentication servers, web hosts, proxy servers, netflow servers, databases, mail servers, RADIUS servers, and domain name servers, the gatherers being positioned on a segment of the network on which the network devices coupled thereto are positioned for minimizing an impact of the gatherers on the network" | Performed by generic computer components; any computer is incidental to the claimed field of use and therefore does not impact patentability. |
| "filtering and aggregating the network communications usage information" | Organizing the usage information by hand and writing all of the usage information for any given customer in the same file. |
| "completing a plurality of data records from the filtered and aggregated network communications usage information, the plurality of data records corresponding to network usage by a plurality of users" | Sitting close to a file cabinet or computer usage log, and completing the earlier records by adding additional fields to the paper. |

15

**Appendix A to Openet's Reply Brief**

| Limitations of '984 Patent Claim 1 | Human/Generic Computer Steps |
|---|---|
| "storing the plurality of data records in a database" | Maintaining the files in a filing cabinet or a general purpose computer. |
| "allowing the selection of one of a plurality of reports for reporting purposes" | Accessing the filing cabinet or spreadsheet where customer information is stored. |
| "submitting queries to the database utilizing the selected reports for retrieving information on the collection of the network usage information from the network devices" | Searching the numerically-organized filing cabinet to retrieve the specified account number's usage information file. |
| "outputting a report based on the queries" | Mailing the summary of usage information to the customer. |

| Limitations of '510 Patent Claim 16 | Human/Generic Computer Steps |
|---|---|
| "collecting network communications usage information in real time" | Going to a file cabinet or computer log and recording, by hand, network usage. A generic computer could expedite this process so it is done in "real time." |
| "from a plurality of network devices at a plurality of layers" | Performed by generic computer components; any computer is incidental to the claimed field of use and therefore does not impact patentability. |
| "filtering and aggregating the network communications usage information" | Organizing the usage information by hand and writing all of the usage information for any given customer in the same file. |
| "completing a plurality of data records from the filtered and aggregated network communications usage information, the plurality of data records corresponding to network usage by a plurality of users" | Sitting close to a file cabinet or computer usage log, and completing the earlier records by adding additional fields to the paper. |
| "storing the plurality of data records in a database" | Maintaining the files in a filing cabinet or on a general purpose computer. |
| "submitting queries to the database utilizing predetermined reports for retrieving information on the collection of the network usage information from the network devices" | Searching the numerically-organized filing cabinet or spreadsheet to retrieve the specified account number's usage information file. |
| "outputting a report based on the queries; wherein resource consumption queries are submitted to the database utilizing the reports for retrieving information on resource | Mailing the summary of usage information to the customer. |

16

**Appendix A to Openet's Reply Brief**

| Limitations of '510 Patent Claim 16 | Human/Generic Computer Steps |
|---|---|
| consumption in a network; and wherein a resource consumption report is outputted based on the resource consumption queries." | |

| Limitations of '797 Patent Claim 1 | Human or Generic Computer Steps |
|---|---|
| "identifying a plurality of services carried out over a network" | Creating a list of various services a telecommunications company offers its customers. |
| "collecting data describing the plurality of services" | Retrieving information describing the various services stored in filing cabinets or in a standard spreadsheet. |
| "generating a single record including the collected data, wherein the single record represents each of the plurality of services" | Writing or recording all of the information describing each of the various services in a single binder. |
| "wherein the services include at least two services selected from a group consisting of a hypertext transfer protocol (HTTP) session, an electronic mail session, a multimedia streaming session, a voice over Internet Protocol (IP) session, a data communication session, an instant messaging session, a peer-to-peer network application session, a file transfer protocol (FTP) session, and a telnet session" | Performed by generic computer components; any computer is incidental to the claimed field of use and therefore does not impact patentability. |
| "wherein the data is collected utilizing an enhancement procedure defined utilizing a graphic user interface" | Performed by generic computer components; any computer is incidental to the claimed field of use and therefore does not impact patentability. |
| "listing a plurality of available functions to be applied in real-time prior to end-user reporting" | Provide a list of available information a colleague may request, such as information pertaining to only one or some of the company's various services. |
| "allowing a user to choose at least one of a plurality of fields" | Permitting colleagues to request specified information from the available list. |
| "allowing the user to choose at least one of the listed functions to be applied to the chosen field in real-time prior to the end-user reporting" | Permitting colleagues to request specified information from the available list before retrieving the specified information from the binder.<br><br>A generic computer could expedite this process so it is done in "real time." |

17

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 14th day of October, 2014, I caused the foregoing document to be served on the following counsel for Amdocs (Israel) Limited via the Court's CM/ECF system:

Gregory H. Lantier, Esq.
James L. Quarles, III
WilmerHale LLP
1875 Pennsylvania Avenue, N.W.
Washington, DC 20006
Gregory.Lantier@wilmerhale.com
James.Quarles@wilmerhale.com

*/s/ Brian H. Pandya*
Brian H. Pandya