IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

AMDOCS (ISRAEL) LIMITED, an          )
  Israeli Corporation,               )
                                     )
          Plaintiff,                 )
                                     )    1:10cv910 (LMB/TRJ)
     v.                              )
                                     )
OPENET TELECOM, INC., a Delaware     )
  Corporation, et al.,               )
                                     )
Defendants.                          )

## MEMORANDUM OPINION

Before the Court is Defendants' Motion for Judgment on the

Pleadings [Dkt. No. 293]. Having considered the pleadings as

well as the oral argument of counsel, the motion will be granted

for the reasons discussed below.

### I.    BACKGROUND

Amdocs (Israel) Limited ("plaintiff" or "Amdocs") and

Openet Telecom LTD and Openet Telecom, Inc. (collectively,

"Openet") compete to provide software which allows

telecommunications providers to track customer usage of computer

network services. On August 16, 2010 Amdocs filed this patent

infringement action alleging that Openet infringed U.S. Patent

Nos. 6,836,797 ("the '797 Patent") and 7,631,065 ("the '065

Patent."). Complaint [Dkt. No. 1]. Amdocs added U.S. Patent Nos.

7,412,510 ("the '510 Patent") and 6,947,984 ("the '984 Patent")

via an Amended Complaint on February 3, 2011. [Dkt. No. 50].
Openet responded with an Answer and Counterclaim, alleging
invalidity and non-infringement and filed a Motion for Summary
Judgment of Non-Infringement and Invalidity on May 26, 2011. The
motion was granted as to non-infringement by a memorandum
opinion on January 22, 2013. [Dkt. No. 259]. Amdocs appealed.
[Dkt. No. 264]. The Federal Circuit affirmed two term
constructions but reversed a third, and accordingly vacated the
grant of summary judgment of non-infringement. Amdocs (Israel)
Ltd. v. Openet Telecom, Inc., 761 F.3d 1329 (Fed. Cir. 2014).
While the case was on appeal, the Supreme Court decided Alice
Corp. Pty. Ltd. v. CLS Bank Int'l, which invalidated a computer
software patent under 35 U.S.C. § 101 for being directed to an
abstract idea. 134 S.Ct. 2347 (2014).

Upon remand, Openet filed the pending Motion for Judgment
on the Pleadings, in which it argues that all of the asserted
claims are invalid under 35 U.S.C. § 101 as being directed to
unpatentable abstract ideas. Defendants' Memorandum In Support
Of Their Motion For Judgment On The Pleadings [Dkt. No. 294]
("Openet's Br."). Amdocs has filed an opposition, Plaintiff's
Opposition To Defendants' Motion For Judgment On The Pleadings
[Dkt. No. 297] ("Opp'n"), and Openet has replied. Openet's Reply

In Support Of Their Motion For Judgment On The Pleadings [Dkt. No. 298] ("Reply").

II.      DISCUSSION

## A. <u>Standard of Review</u>

"Section 101 patent eligibility is a question of law." <u>In re Roslin Institute (Edinburgh)</u>, 750 F.3d 1333, 1335 (Fed. Cir. 2014). Accordingly, a court may invalidate patent claims directed to non-eligible subject matter on the pleadings. <u>See buySAFE, Inc. v. Google, Inc.</u>, 765 F.3d 1350 (Fed. Cir. 2014).

In a motion for judgment on the pleadings, the court should "assume all facts alleged in the complaint are true and draw all reasonable factual influences in [the plaintiff]'s favor." <u>Burbach Broadcasting Co. of Del. v. Elkins Radio Corp</u>, 278 F.3d 401, 406 (4th Cir. 2002). "Judgment should be entered when the pleadings, construing the facts in the light most favorable to the non-moving party, fail to state any cognizable claim for relief, and the matter can, therefore, be decided as a matter of law." <u>O'Ryan v. Dehler Mfg. Co.</u>, 99 F. Supp. 2d 714, 718 (E.D. Va. 2000).

## B. <u>Patentability after Alice</u>

To be eligible for a patent, a claimed invention must be directed to "any new and useful process, machine, manufacture, or composition of matter." 35 U.S.C. § 101 (2012). "In choosing such expansive terms . . . modified by the comprehensive 'any,'

3

Congress plainly contemplated that the patent laws would be given wide scope," Diamond v. Chakrabarty, 447 U.S. 303, 308 (1980); however, "for more than 150 years" the Supreme Court has "held that [§ 101] contains an important implicit exception: Laws of nature, natural phenomena, and abstract ideas are not patentable." Alice Corp. Pty. Ltd. v. CLS Bank Intern., 134 S.Ct. 2347, 2354 (2014)(quoting Ass'n for Molecular Pathology v. Myriad Genetics, Inc., 133 S.Ct. 2107, 2116 (2013)). Accordingly, "a new mineral discovered in the earth or a new plant found in the wild is not patentable subject matter. Likewise, Einstein could not patent his celebrated law that $E=mc^2$; nor could Newton have patented the law of gravity." Chakrabarty, 447 U.S. at 309.

Although those examples match the Supreme Court's old description of the exceptions as "a fundamental truth; an original cause; [or] a motive," LeRoy v. Tatham, 55 U.S. 156, 175 (1852), claims which are not so purely abstract have also been invalidated under § 101. For example, in Bilski v. Kappos the Court found a claim directed to "the basic concept of hedging, or protecting against risk" to be unpatentable. 130 S. Ct. 3218, 3231 (2010). In Bilski, the Court looked past the text of the claims to the underlying concept, and viewing the claimed invention as manifesting no more than an abstract idea declared

the claims patent ineligible. Id. This conforms with the Supreme Court's warning "against interpreting patent statutes in ways that make patent eligibility depend simply on the draftsman's art." Mayo Collab. Servs. v. Prometheus Labs. Inc., 132 S.Ct. 1289, 1294 (2012)(internal quotation marks omitted).

Decided on June 19, 2014,[1] Alice articulated a two-step process for determining whether a claim was directed to patent-eligible subject matter. 134 S.Ct. at 2355. "First, [a court must] determine whether the claims at issue are directed to [a] patent-ineligible concept[]." Id. "If so, [the court must] then ask, 'what else is there in the claims before us?'" Id. (internal quotation marks omitted). "To answer that question, [the court must] consider the elements of each claim . . . to determine whether the additional elements transform the nature of the claim into a patent-eligible application." Id. (internal quotation marks omitted).

At step one, a court must evaluate the claims "[o]n their face" to determine to which "concept" the claims are "drawn." Id. at 2356 ("On their face, the claims before us are drawn to the concept of intermediated settlement."); Bilski, 130 S.Ct. at 3229 (finding claims drawn to "both the concept of hedging risk

---

[1] After the grant of summary judgment, and while this case was on appeal to the Federal Circuit.

and the application of that concept to energy markets" to be
patent ineligible).

At step two, a court "search[es] for an inventive concept –
i.e., an element or combination of elements that is sufficient
to ensure that the patent in practice amounts to significantly
more than a patent upon the ineligible concept itself." Alice,
134 S.Ct. at 2355 (internal quotation marks omitted). In Alice,
the Court concluded that the claimed invention was directed to
an abstract idea implemented on a generic computer, and that
computer implementation was not "sufficient to transform the
claimed abstract idea into a patent-eligible application." Id.
at 2357 (internal quotation marks omitted). For an abstract idea
involving a computer to be patent-eligible, "the claim ha[s] to
supply a 'new and useful' application of the idea." Id. (quoting
Gottschalk v. Benson, 409 U.S. 63, 67 (1972)). Accordingly, "the
mere recitation of a generic computer cannot transform a patent-
ineligible abstract idea into a patent eligible invention." Id.
at 2358. At step two, the Supreme Court looked at the invention
as described by the claims, rather than the further detail given
in the specification. See id. at 2359.

This framework requires considering what constitutes an
abstract idea and what can raise an abstract idea to the level
of a patent-eligible application. The Supreme Court explicitly

refused to "delimit the precise contours of the 'abstract ideas'
category." Id. at 2357. Although the Court was clear that
"appending conventional steps, specified at a high level of
generality" or reciting the use of a generic computer was not
sufficient to make an idea patent eligible, id., neither did the
Court elucidate any necessary elements for eligibility. See id.
at 2358. The Court described Diamond v. Diehr, 450 U.S. 175
(1981) as succeeding at step two because the claim "improved an
existing technological process," id., and implied that if the
claims "improve[d] the function of the computer itself" then
they would be patentable. Id. at 2359. Indeed, one district
judge observed that since Alice, the "two step test" is more
like Justice Stewart's statement about obscenity: "I shall not
today attempt further to define the kinds of material I
understand to be embraced within that shorthand description, and
perhaps I could never succeed in intelligibly doing so. But I
know it when I see it." McRO, Inc. v. Activision Pub., Inc.,
No. CV 14-336-GW, 2014 WL 4759953, at *5 (C.D. Cal. Sept. 22,
2104) (quoting Jacobellis v. State of Ohio, 378 U.S. 184, 197
(1964)(Stewart, J., concurring)).

       Application of the two-part test can be guided by the
rationale underlying the doctrine that abstract ideas are not
patentable. The § 101 exceptions prevent a patentee from

preempting further research, which the Court has explained as a concern because "[l]aws of nature, natural phenomena, and abstract ideas are the basic tools of scientific and technological work . . . Monopolization of those tools through the grant of a patent might tend to impede innovation more than it would tend to promote it, thereby thwarting the primary object of the patent laws." Alice, 134 S.Ct. at 2354 (internal quotation marks omitted).

The preemption concern must also be considered in light of the field to which the patent is directed. If the claimed abstract idea "has no substantial practical application except in connection" with the particular field claimed, then allowing a claim to that idea, even if limited to a particular field, "would wholly pre-empt" the idea and "in practical effect would be a patent on the [idea] itself." Gottschalk v. Benson, 409 U.S. 63, 71-72 (1972). In other words, even if an idea is only useful in one particular field, "limiting" a patent claim to that particular field is not enough to transform the idea into something patent-eligible because the idea would only work in that field anyway. In Gottschalk, for example, the claim was to a method, in a digital computer, of converting a decimal representation of a number to a binary representation. Id. at 65-66. Because that formula "has no substantial practical

application except in connection with a digital computer, [allowing the claim] would wholly preempt the mathematical formula and in practical effect would be a patent on the algorithm itself." Id. at 71-72.

Courts must balance concerns about preemption with the reality that, at some level, all inventions use abstract ideas, laws of nature, and natural phenomena. Alice, 134 S.Ct. at 2354. That a claim involves an abstract concept is not enough to render the claim invalid; the claim must also preempt research or invention. The preempted area does not need to be broad. "[T]he underlying functional concern is a relative one: how much future innovation is foreclosed relative to the contribution of the inventor. A patent upon a narrow law of nature may not inhibit future research as seriously as would a patent upon Einstein's law of relativity, but the creative value of the discovery is also considerably smaller." Mayo Collab. Servs. v. Prometheus Labs. Inc., 132 S.Ct. 1289, 1303 (2012) (citation omitted). Accordingly, in applying the § 101 exceptions, a court must distinguish patents that claim only ideas from those which claim ideas as part of something more. Alice, 132 S.Ct. at 2354; Digitech Image Techs., LLC v. Electronics for Imaging, Inc., 758 F.3d 1344, 1350 (Fed. Cir. 2014) ("A claim may be eligible if it

includes additional inventive features such that the claim scope does not solely capture the abstract idea.").

A claim directed to "a method of organizing human activity" seems presumptively patent ineligible. Alice, 134 S.Ct. at 2356. In Alice, the Court rejected the assertion that abstract ideas must be "preexisting, fundamental truth[s]," because the claims in Bilski were directed to a method of organizing human activity. Id. In Alice, however, the Court invalidated a claim "drawn to the concept of intermediated settlement," and did not state that the claim was merely a method of organizing human activity. Id. Relying on the characterization of Bilski in Alice, courts have invalidated patent claims which merely organized human activity. See, e.g., Planet Bingo, LLC v. VKGS LLC, No. 2013-1663, 2014 WL 4195188, at *2 (Fed. Cir. Aug. 26, 2014) (invalidating as an abstract idea a patent claim to "managing a bingo game.").

## C. **Procedural Bar**

At the onset, Amdocs argues that this Court should deny defendants' motion because it is procedurally barred and contrary to the "law of the case." Opp'n at 7-10. In particular, Amdocs argues that Openet already presented summary judgment argument on the § 101 issue, but lost the motion after the Court found that there were genuine issues of material fact precluding summary judgment of invalidity. Id. at 10. Openet responds that

the Court may consider validity because the Court never

concluded that Amdocs's patents were drawn to eligible subject

matter. Moreover, a court may revisit an interlocutory ruling

(such as denial of summary judgment) at any time, and, in any

event, Alice represents a change in substantive law as applied

to this case. Reply at 11-13.

Openet has the better of this argument. Whether Amdocs's

patents were drawn to eligible subject matter was not resolved

by the Court, and even if the issue had been addressed Alice

represents a change, or a significant clarification, of the law:

"Alice . . . categorically establish[ed] a clear rule that had

been previously subject to debate: 'mere recitation of a generic

computer cannot transform a patent-ineligible abstract idea into

a patent-eligible invention.'" Eclipse IP LLC v. McKinley

Equipment Corp., No. SACV 14-742-GW, 2014 WL 4407592, at *3

(C.D. Cal. Sept. 4, 2014).[2] Accordingly, there is no bar to

reaching the merits of Openet's motion.

### D. Analysis Under § 101

#### 1. '065 Patent

Amdocs alleges infringement of claims 1, 4, 7, 13, and 17

of the '065 Patent. Opp'n at 15. Claims 1, 7, and 13 are

---

[2] Further, the Supreme Court decided Mayo – the main case on which Alice
relies – on March 20, 2012, which was after completion of summary judgment
briefing. Amdocs filed the last brief regarding summary judgment on June 30,
2011, [Dkt. No. 166], and the last hearing regarding summary judgment was on
July 25, 2011. See Transcript of July 25, 2011 Proceedings [Dkt. No. 240].

independent, claiming a computer program product, a method, and a system, respectively. See '065 Patent Col. 16. Claim 1 is representative:

> 1. A computer program product embodied on a computer readable storage medium for processing network account information comprising:
> computer code for receiving from a first source a first network accounting record;
> computer code for correlating the first network accounting record with accounting information available from a second source; and
> computer code for using the accounting information with which the first network accounting record is correlated to enhance the first network accounting record.

Both Amdocs and Openet only present arguments regarding claim 1; this accords with Alice, Mayo, and Bilski, in which the Supreme Court found that various claim types (method, system, etc.) directed to the same invention should rise and fall together. See Alice, 134 S.Ct. at 2360 (invalidating under § 101 system claims that were "no different from the method claims in substance.").

Openet argues that claim 1 of the '065 Patent is directed to the abstract idea of "correlating and enhancing network usage data," which is ineligible subject matter because it merely creates and merges two data sets, similar to the claim at issue in Alice. Openet's Br. at 7-8. Openet further argues that the claim is similar to the claims invalidated by the Federal Circuit in Digitech Image Techs., LLC v. Electronics for

12

Imaging, Inc. Id. at 8 (citing Digitech, 758 F.3d 1344, 1350
(Fed. Cir. 2014)). Finally, Openet argues that the elements
recited by claim 1 of the '065 Patent are merely conventional,
and do not improve the functioning of the computer or effect an
improvement in any technology or field. Openet's Br. at 9.
Amdocs responds that the claim does not recite a fundamental
economic practice or method of organizing human activity, and so
is not similar to the claims found ineligible in Bilski and
invalidated in Alice. Opp'n at 15. Further, Amdocs argues that
the claim "is directed to a specific improvement to packet-based
network billing technology" and therefore, to the extent that
the claims recite an abstract idea, they recite sufficiently
"more" to make the claim patent-eligible. Id. at 16.

To determine whether the claim is patent eligible, the
Court employs the two-step analysis articulated in Alice. Step
one requires determining whether the claim is directed to an
abstract idea. On its face and looking past the mere claim
language, claim 1 focuses on the concept of correlating two
network accounting records to enhance the first record. As the
claim satisfies step one by being drawn to an abstract idea, the
court must turn to step two to determine whether the claim adds
enough to the abstract idea to make the claim patent eligible.
Here, claim 1 does not add to the idea of correlating two

13

network accounting records. Indeed, it is difficult to conceive of broader terms with which the idea of correlating two records could be described. Claim 1 does not limit the correlation to any specific hardware, nor give any detail regarding how the records are "correlated" or "enhanced." Accordingly, the claim amounts to "nothing significantly more than an instruction to apply the abstract idea" of correlating two network accounting records "using some unspecified, generic" computer hardware. See Alice, 134 S.Ct. at 2360 (internal quotation marks omitted). Accordingly, claim 1 is invalid under 35 U.S.C. § 101.

This conclusion is buttressed by decisions from other courts which have held similar claims invalid. For example, the claim invalidated in Alice involved correlating a shadow credit record and a shadow debit record, and provided much more detail than does claim 1 of the '065 Patent. Id. at 2352 n.2. Similarly, the claim at issue in Digitech involved generating a device profile (i.e., an enhanced record) from two other sets of data. 758 F.3d at 1350-51. In that case, the Federal Circuit found that "[w]ithout additional limitations, a process that employs mathematical algorithms to manipulate existing information to generate additional information is not patent eligible." Id. at 1351. In Alice, the Supreme Court found that "electronic recordkeeping" was "one of the most basic functions

14

of a computer" and, therefore, the claim was directed to an abstract idea because the claim simply required a "generic computer to perform generic computer functions." 134 S.Ct. at 2359.

Claim 1 also implicates the preemption concerns that the Supreme Court indicated animate the § 101 eligibility exceptions. Because claim 1 "has no substantial practical application except in connection" with computer networks, finding claim 1 patent-eligible "would wholly preempt" essentially all research or development involving correlation of two accounting records over a network, and therefore "in practical effect would be a patent on the [idea] itself." See Gottschalk v. Benson, 409 U.S. 63, 71-72 (1972). Claim 1 does not "integrate the [abstract idea] into something more," and therefore is not patent eligible. Alice, 134 S.Ct. at 2355.

Amdocs's arguments that the claim is patent eligible fail. First, Amdocs argues that that the claim is not directed to a fundamental economic practice, as in Bilski, or a method of organizing human activity, as in Alice. Opp'n at 15. Accordingly, Amdocs argues that because the claim is "far from a 'fundamental truth,'" it is patent eligible. Id. In Alice, however, the Supreme Court specifically found that abstract

ideas were not limited to "preexisting, fundamental truth[s]."
Alice, 134 S.Ct. at 2356.

Amdocs also argues that all asserted claims are patentable because the claims could not be performed by a human being alone. Opp'n at 12 (citing Helios Software, LLC v. SpectorSoft Corp., No. 12-081-LPS, 2014 WL 4796111, at *17 (D. Del. Sept. 18, 2014)). Alice focuses the inquiry, however, on whether the claim is directed to an abstract idea, not on whether the claim could be performed by a human. See Alice, 134 S.Ct. at 2359-60. Although performance by a human may be sufficient to find that an idea is abstract, it is not necessary. See id.; Digitech, 758 F.3d at 1351. Accordingly, Amdocs's argument fails.

Amdocs also argues that, despite the spate of patents invalidated under 35 U.S.C. § 101 post-Alice, "no court has invalidated patent claims . . . directed to specific technology similar to the claims of the asserted patents." Opp'n at 11. That argument also fails. Courts have not only invalidated patents for business methods or methods of organizing human activity since Alice, but in McRO, Inc. v. Activision Pub., Inc. Judge Wu invalidated a patent to a novel method for animating lip synchronization and facial expressions of three-dimensional characters, even though he recognized that the patentee invented an innovative process. No. CV 14-336-GW, 2014 WL 4759953, at *11

16

(C.D. Cal. Sept. 22, 2014). The Supreme Court spoke broadly in Alice, and did not restrict its holding to any particular field or fields.

Finally, Amdocs presents a number of arguments regarding unclaimed aspects of how the invention operates. For example, Amdocs quotes this Court's previous memorandum opinion, which stated that "[t]he patented system collects . . . raw usage data records from their diffuse locations throughout the network and through appropriate filtering, aggregation, correlation, and enhancement transforms them into a format suitable for accounting." Opp'n at 15-16 (quoting January 22, 2013 Memorandum Opinion [Dkt. No. 259] at 6). As those features are unclaimed, they cannot affect patent eligibility.

Accordingly, claim 1 of the '065 patent, as well as claims 7 and 13, are directed to ineligible subject matter and are therefore invalid. Dependent claim 4 only adds that "the accounting information is in the form of a second network accounting record," and dependent claim 17 only adds that the system further includes "a module coupled to the plurality of data collectors, the module receives the records produced by the plurality of data collectors for aggregation purposes, and wherein the enhancement component resides in the module." Because the claims do not add sufficiently "more" to render them

17

patent eligible, and Amdocs does not argue that they do, see

Opp'n at 15-16 and 22-24, these claims are also invalid.

    2. '510 Patent

Amdocs alleges infringement of claims 16, 17, and 19 of the

'510 Patent. Opp'n at 15. Claims 16 is independent, claiming a

computer program product. See '510 Patent Col. 17. Claim 16

provides:

> 16. A computer program product stored in a computer
> readable medium for reporting on a collection of network
> usage information from a plurality of network devices,
> comprising:
>     computer code for collecting network communications
> usage information in real-time from a plurality of network
> devices at a plurality of layers;[3]
>     computer code for filtering and aggregating the
> network communications usage information;
>     computer code for completing a plurality of data
> records from the filtered and aggregated network
> communications usage information, the plurality of data
> records corresponding to network usage by a plurality of
> users;
>     computer code for storing the plurality of data
> records in a database;
>     computer code for submitting queries to the database
> utilizing predetermined reports for retrieving information
> on the collection of the network usage information from the
> network devices; and
>     computer code for outputting a report based on the
> queries;
>     wherein resource consumption queries are submitted to
> the database utilizing the reports for retrieving
> information on resource consumption in a network; and
>     wherein a resource consumption report is outputted
> based on the resource consumption queries.

---

[3] Information sent from one computer to another computer through a network
must pass through one or more layers, depending on the source of the
information. See, e.g., Internetworking Technologies Handbook, Cisco Systems,
Inc. (4th ed. 2004) at 10-16. "Each layer in the source system adds control
information to data, and each layer in the destination system analyzes and
removes control information from that data." Id. at 13.

Openet argues that claim 16 of the '510 Patent is directed to "[t]he abstract idea of . . . creation of a database of network usage information that can be queried to retrieve information on the collection of network usage information. Reports can be generated based on the queries and alerts can be set." Openet's Br. at 11. Openet argues that because the prior art included the use of batch processing, the computer implementation does not provide the inventive concept necessary at step two. Id. Further, Openet argues that the claim is drawn to a method of organizing human activity, as it could be performed by a human being with a file cabinet. See id. at 12. Amdocs responds that because the data is collected and processed by a physical device, the claims cover enhancements of network accounting records in a packet-based network, and the enhancement must occur close to the source of the usage information, the tasks cannot be performed by a human and therefore the claim is patent eligible. Opp'n at 19.

Claim 16 of the '510 Patent is not as manifestly broad as claim 1 of the '065 Patent. Accordingly, at step one of the Alice analysis, the concept at issue must be framed carefully, mindful of preemption while recognizing that at some level all patent claims involve an abstract idea or other building block of human knowledge. Alice, 134 S.Ct. at 2354. Claim 16 of the

19

'510 Patent meets step one by being directed to the abstract idea of using a database to compile and report on network usage information. Therefore, step two analysis is appropriate to determine whether the claim adds enough to be patent eligible. Here, as with claim 1 of the '065 Patent, the claim does not add much to the idea of using a database to compile and report on network usage. In claim 16, a generic computer collects, filters, aggregates, and completes network communications information. '510 Patent Col. 17. The generic computer then stores the information in a database, and queries the database to retrieve reports. Collecting, filtering, aggregating, and completing network information amounts to "electronic recordkeeping," which is "one of the most basic functions of a computer." Alice, 134 S.Ct. at 2359. Similarly, storing and querying information in a database, and building reports based on that information, is one of the most basic functions of a database system. Accordingly, claim 16 is directed to a computer functioning in a conventional way, and a database functioning in a conventional way. The claim does not add any specific implementation beyond the abstract idea that information is collected and stored, and reports are generated. Therefore, the claim is directed to an unpatentable abstract idea.

Because asserted dependent claims 17 and 19 do not

"transform" claim 16 to a patent-eligible application of an

abstract idea (nor does Amdocs argue that they do, see Opp'n at

16-19), those claims are invalid for the same reason.

3. '797 Patent

Amdocs alleges infringement of claims 1, 2, 7, 8, and 19 of

the '797 Patent. Claims 1, 7, and 19 are independent, and claim

1 is representative:

> 1. A method for generating a single record reflecting
> multiple services for accounting purposes, comprising:
>     (a) identifying a plurality of services carried out
> over a network;
>     (b) collecting data describing the plurality of
> services; and
>     (c) generating a single record including the collected
> data, wherein the single record represents each of the
> plurality of services;
>     wherein the services include at least two services
> selected from a group consisting of a hypertext transfer
> protocol (HTTP) session, an electronic mail session, a
> multimedia streaming session, a voice over Internet
> Protocol (IP) session, a data communication session, an
> instant messaging session, a peer-to-peer network
> application session, a file transfer protocol (FTP)
> session, and a telnet session;
>     wherein the data is collected utilizing an enhancement
> procedure defined utilizing a graphical user interface by:
>         listing a plurality of available functions to be
> applied in real-time prior to end-user reporting;
>         allowing a user to choose at least one of a
> plurality of fields, and
>         allowing the user to choose at least one of the
> listed functions to be applied to the chosen field in real-
> time prior to end-user reporting.

Openet argues that the claims of the '797 Patent are directed to

the abstract idea of "creation of a single record for accounting

purposes from information collected from two of the specified services." Openet's Br. at 19. Amdocs repeats its argument that the claims are not directed to a "fundamental truth." Opp'n at 20. Amdocs also argues that the '797 Patent specifically states how data is collected – namely, "utilizing an enhancement procedure defined utilizing a graphical user interface." Id. at 27.

Under step one of the Alice analysis, the abstract idea in this claim is to generate a single record reflecting multiple services. At step two, the claim does not appear to add more than conventional computer functions operating in a conventional manner. For example, a generic computer identifies services, collects data, and generates a single record. Again, this amounts to "electronic recordkeeping . . . one of the most basic functions of a computer." Alice, 134 S.Ct. at 2359. The data is collected using an enhancement procedure via a graphical user interface (GUI), which is the conventional method for a user to interact with a computer and computer data. The listed "services" are merely the conventional methods of computer network communication. Accordingly, the claim is directed to an abstract idea performed using purely conventional computer operations, and is, therefore, invalid under § 101.

As they are directed to essentially the same invention, claims 7 and 19 are also directed to ineligible subject matter. Dependent claims 2 and 8 do not add sufficiently "more" to render them patent eligible, and Amdocs does not argue that they do. See Opp'n at 26-27. Therefore, the asserted claims of the '797 Patent are also invalid.

4. '984 Patent

Amdocs alleges infringement of claim 1, 2, 7, 8, and 13. Claims 1 and 13 are independent, and claim 1 is representative:

1. A method for reporting on the collection of network usage information from a plurality of network devices, comprising:
(a) collecting networks communications usage information in real-time from a plurality of network devices at a plurality of layers utilizing multiple gatherers each including a plurality of information source modules each interfacing with one of the network devices and capable of communicating using a protocol specific to the network device coupled thereto, the network devices selected from the group consisting of routers, switches, firewalls, authentication servers, web hosts, proxy servers, netflow servers, databases, mail servers, RADIUS servers, and domain name servers, the gatherers being positioned on a segment of the network on which the network devices coupled thereto are positioned for minimizing an impact of the gatherers on the network;
(b) filtering and aggregating the network communications usage information;
(c) completing a plurality of data records from the filtered and aggregated network communications usage information, the plurality of data records corresponding to network usage by a plurality of users;
(d) storing the plurality of data records in a database;
(e) allowing the selection of one of a plurality of reports for reporting purposes;
(f) submitting queries to the database utilizing the selected reports for retrieving information on the collection of the network usage information from the network devices; and
(g) outputting a report based on the queries.

23

Openet argues that the claims of the '984 Patent are directed to the abstract idea of "the creation of a 'queryable' database of network usage information." Openet's Br. at 14. Openet argues that the claims of the '984 Patent "add nothing more than generic and conventional computer hardware," and that "[t]he claim recites a litany of well-known 'network devices,' none of which is performing anything other than its typical and ordinary function." Id. Openet also argues that the claims could be performed by a human being. Id. Amdocs groups the '984 Patent with the '510 Patent, responding that the claim involves sufficiently more than the abstract idea itself, particularly adding information source modules and that the network devices communicate with specific protocols. Opp'n at 25.

In light of Amdocs's grouping of the asserted claims of the '984 Patent with the asserted claims of the '510 Patent, see Opp'n at 16-19 and 24-26, and admission at oral argument that such grouping is appropriate, Transcript of Oct. 24, 2014 Oral Argument [Dkt. No. 300] at 5-6, the asserted claims of the '984 Patent are invalid for the reasons supporting invalidity of the '510 Patent.

Even taken separately, the claims of the '984 Patent are invalid as directed to abstract ideas. Starting again at step

24

one of Alice, the abstract idea at issue in this claim is reporting on the collection of network usage information from a plurality of network devices. At step two, the Court must determine whether the claims add sufficiently more to the abstract idea to render it patent eligible. At step (a), some device - presumably a generic computer - collects data communication usage information from a number of conventional devices for network communication.[4] In essence, the generic computer collects information from conventional devices to create records. This data collection occurs through gatherers, which are software. See col. 6 ll. 25-35. At steps (b) through (g), the same generic computer performs filtering, completing, storing, allowing, submitting, and outputting. The generic computer interacts with a database, which stores records and responds to queries. All of those actions are conventional for both generic computers and generic databases.

As it is directed to essentially the same invention, claim 13 is also directed to ineligible subject matter. Dependent claims 2, 7, and 8 do not add sufficiently "more" to render them patent eligible, and Amdocs does not argue that they do. See Opp'n at 26-27. Therefore, the asserted claims of the '984 Patent are also invalid.

---

[4] The claim also lists a "firewall," which is not a device at all.

## E. Response Regarding Novelty

Amdocs often argues that it developed a new process that solved a problem existing in the art. See, e.g., Opp'n at 1, 6-7. That argument misses the point. The concern of § 101 is not novelty, but preemption. In Alice, the Supreme Court articulated concerns that claims to abstract ideas would preempt the "building blocks" of research – in essence, that people who merely had the idea of how to solve a problem, but did not actually know how to solve the problem, would prevent others from performing research and achieving actual solutions. See 134 S.Ct. at 2354. A person may have invented an entirely new and useful advance, but if the patent claims sweep too broadly, or only claim the idea that was achieved rather than implementation of the idea, § 101 directs that the patent is invalid. Amdocs's asserted claims recite such conventional operation, in such a general way, that even if the inventor had developed an actual working system, the patent claims could foreclose fields of research beyond the actual invention. Accordingly, all asserted claims are invalid as patent-ineligible.[5]

---

[5] At oral argument, Amdocs also argued that the asserted claims, across all four patents, were directed to eligible subject matter because a member of the public would have notice of which activities the patent covered and so could avoid infringement. Transcript of Oct. 24, 2014 Oral Argument [Dkt. No. 300] at 11-13. That argument misses the mark. The exceptions to § 101 seek to avoid preemption, not ensure that the patent provides adequate notice to the public. Instead, 35 U.S.C. § 112 addresses the notice function. Nautilus, Inc. v. Biosig Instruments, Inc., 134 S.Ct. 2120, 2130 (2014).

III.   CONCLUSION

For the reasons stated above, Defendants' Motion for Judgment on the Pleadings [Dkt. No. 293] will be GRANTED by an appropriate Order to be issued with this Memorandum Opinion.

Entered this 24ᵗʰ day of October, 2014.

Alexandria, Virginia

_____ /s/

Leonie M. Brinkema
United States District Judge

27